COMMONWEALTH *vs*. MARK PIKUL.

Hampden. April 6, 1987. — August 6, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Grand Jury. Evidence,* Expert opinion, Admissions and confessions. *Homicide. Practice, Criminal,* Capital case.

A criminal defendant's motions for new trial and to dismiss the indictments were properly denied where the record did not support his claim that an unauthorized person was present in the grand jury room when he testified. [551-552]

At the trial of indictments for murder in the first degree and rape and abuse of a child, opinions of three medical experts that the cause of the victim's death was traumatic sexual asphyxia were properly admitted. [552-555]

INDICTMENTS found and returned in the Superior Court Department on July 14, 1983.

The cases were tried before *John F. Moriarty,* J.

*Murray Shulman* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a jury trial in the Superior Court, the defendant, Mark Pikul, was convicted of murder in the first degree and rape of a child, without force. He was sentenced to life imprisonment at the Massachusetts Correctional Institution, Walpole (now Cedar Junction), on the murder conviction and a term of ten to fifteen years on the rape conviction, to be served concurrently with the life sentence.

The defendant testified that, after he and the victim (the defendant's three and one-half year old stepdaughter) returned home from a local coffee shop on the morning of October 29, 1982, the victim went into the bathroom, at which time she said to the defendant, "I love you." After "a few minutes," the defendant stated he heard a thump, ran into the bathroom, and found the victim on the floor lying on her back. The defendant recounted his unsuccessful attempt to revive the

victim with cardiopulmonary resuscitation. At some time the defendant used a stethoscope which was at the house and heard no sign of breathing or of a heartbeat. The defendant testified that he had "slapped" the victim during his resuscitation efforts. The defendant then returned to the coffee shop, whereupon someone drove the defendant and the victim to the hospital.

The victim arrived at the Ludlow Hospital emergency room in a state of complete cardiac and pulmonary arrest, and was transferred to Baystate Medical Center later that same day and placed on life support systems. She was declared dead on December 3, 1982, when all efforts to maintain her on artificial life support systems failed. There was testimony that, the night before the incident, the victim had been brought by the defendant and the victim's mother to a pediatrician because she had vomited several times and had had intermittent fever earlier in the day. A diagnosis of mild viral gastroenteritis was made.

The Commonwealth's theory of the case was that the victim died of asphyxiation during the course of an oral rape by the defendant. The Commonwealth produced three expert witnesses, Dr. Edward Norman Bailey, Dr. Bruce Dziura, and Dr. William Sturner, all of whom testified that, in their opinion, the victim died of traumatic sexual asphyxia, i.e., asphyxia during forced oral sexual assault.

The defendant claims that the testimony of the Commonwealth's experts was erroneously admitted as it was a direct opinion on the ultimate issue and improper in form; beyond their expertise; did not tend toward the conclusion drawn; and, it was improper speculation and conjecture. The defendant further claims that, absent the expert medical evidence, there was insufficient evidence for a finding of guilty and, thus, the defendant's motion for a required finding of not guilty should have been allowed. In addition, the defendant claims that the indictments must be dismissed due to grand jury impropriety, i.e., an unauthorized person in the grand jury room. Finally, the defendant seeks relief under G. L. c. 278, § 33E (1984 ed.).

1. *Grand jury impropriety.* On March 28, 1986, the defendant filed two motions in this court, one for a new trial and one to dismiss the indictments against him, both based on the

defendant's claim that an unauthorized person, Detective Lieutenant John J. Mace, was present in the grand jury room while the defendant was testifying. After remand by this court, the trial judge found that the defendant may have seen Lieutenant Mace in the waiting room which is near the grand jury room, but that the defendant was mistaken in his belief that Lieutenant Mace was in the grand jury room. He found Lieutenant Mace to be an experienced senior officer of the Massachusetts State police and believed his testimony that he had never intruded into the grand jury room during testimony and particularly did not do so in this case. Thus, the factual predicate on which this claim is based is missing. Therefore, the motions were properly denied.

2. *Expert testimony.* Dr. Bailey examined the victim a few days after she had been brought to the hospital comatose and unresponsive and placed on life support systems. He observed numerous bruises on the victim's forehead,[1] back, leg, buttock and ears, a facial rash, a torn hymen and widely open vagina.[2] He testified that the bruises on the ears were quite uncommon and were observed only where abuse had occurred. He believed that they were most consistent with pinching of both ears with extreme force. Based on his review of the medical records, the autopsy findings, his interview with the defendant, his examination of the child, his knowledge of her condition while in the hospital, his training and experience in child abuse and sexual assault cases, and the physical evidence he observed, he was of the opinion that the victim had died during an oral rape.

Dr. Dziura performed the autopsy on the victim and his "conclusion as to the chief operating cause of death" was "traumatic asphyxia". He stated that it could be caused by a penis inserted in the mouth and that such is a definite subgroup

---

[1] The bruise on her forehead appeared to Dr. Bailey to have occurred less than a week prior to the taking of the slides; the bruises on her back and leg approximately a week prior to that time. The slides of the bruises were taken on October 30, 1982.

[2] Dr. Dziura, who testified after Dr. Bailey, stated that the torn hymen and open vagina were conditions that occurred earlier than October 30, 1982.

of traumatic asphyxia, i.e., sexual asphyxia. He later stated
that there was no other cause suggested by all the information
available in the present case. He based his conclusion of sexual
asphyxia on his training and experience in the field of forensic
pathology and as a medical examiner, his review of the medical
records in the case, his interview and consultation with other
doctors, his review of the laboratory results and the autopsy.
He stated that the bruises on the ears were "extremely sugges-
tive" of forced oral sex. He further stated that his opinion
regarding the cause of death was "within a reasonable degree
of medical certainty."

Dr. Sturner participated in the autopsy, with Dr. Dziura.
He concluded that the "manner and means of death" was
traumatic sexual asphyxia, i.e., forced oral sex. He based this
on his twenty years experience in forensic pathology, his con-
ducting 8,000 autopsies, 1,000 of them involving children, his
review of the medical reports in the case, the autopsy and the
resulting findings, his training and experience in child abuse
and child sexual assaults, his conclusion that there was no
preexisting condition that could have led to the child's death,
his observations of the child revealing the "fresh pinch marks"
on the ears and the facial rash, and his examination of the
child's torn hymen and enlarged vaginal opening.

The defendant makes a number of challenges to the admis-
sion of the expert testimony. Since we conclude that the evi-
dence was properly admitted, it is of no significance that he
failed to raise these objections at trial.

The admission of expert testimony is largely within the dis-
cretion of the trial judge and will be reversed only where it
constitutes an abuse of discretion or error of law. *Common-
wealth* v. *Devlin,* 365 Mass. 149, 152 (1974). An expert may
testify on matters within his or her expertise where the tes-
timony will aid the jury in reaching a decision. *Simon* v. *Sol-
omon,* 385 Mass. 91, 105 (1982). *Commonwealth* v. *Montmeny,*
360 Mass. 526, 527 (1971). There is no suggestion that the
Commonwealth's experts were not qualified but only that their
testimony was improper because it was beyond their expertise,
reached the ultimate issue, and was based upon conjecture or
surmise.

Dr. Dziura and Dr. Sturner testified that the cause of death was traumatic sexual asphyxia (asphyxiation caused by oral sex). An expert who has performed an autopsy may testify that the injuries observed could have been caused in a particular way or by a specified instrumentality. *Commonwealth* v. *A Juvenile,* 365 Mass. 421, 437 (1974). See *Commonwealth* v. *Dawn,* 302 Mass. 255, 259 (1939) (medical expert can testify regarding what instrumentality could produce condition of victim). Furthermore, the possibility that there could have been other causes of the victim's death does not render the expert's testimony inadmissible. *Commonwealth* v. *Nadworny,* 396 Mass. 342, 359 (1985). Finally, "[u]nder modern standards, expert testimony on matters within the witness's field of expertise is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide." *Simon* v. *Solomon, supra* at 105.

An expert's opinion, however, cannot be mere conjecture or surmise. *Commonwealth* v. *Nadworny, supra* at 358. *Commonwealth v. Gregory,* 17 Mass. App. Ct. 651, 655 (1984). *Hachadourian's Case,* 340 Mass. 81, 86 (1959). P. J. Liacos, Massachusetts Evidence 104 (5th ed. 1981). The expert "may base his opinion upon facts observed by himself or within his own knowledge and testified to by himself, or upon facts assumed in the questions put to him and supported either by admitted facts or by the testimony of other witnesses already given or to be given at the trial, or upon facts derived partly from one source and partly from the other." *Commonwealth* v. *Russ,* 232 Mass. 58, 73 (1919). The basic facts, proved or assumed, must be sufficient to support the conclusion reached. *Commonwealth* v. *Gregory, supra* at 655.

The opinions of the experts were within the area of their expertise and not based on conjecture and surmise. Dr. Bailey examined the child after she had been admitted to the hospital and placed on life supports. Dr. Dziura and Dr. Sturner performed the autopsy on the child. All three experts reviewed the medical records including medical history, and the autopsy findings. They based their opinions on the above and on the

physical findings from examination of the child, i.e., the red
marks on her ears, her torn hymen and enlarged vagina. Dr.
Bailey and Dr. Sturner took into account her facial rash. Dr.
Bailey also noted numerous bruises on the child's body. Of
course, all based their opinions as well on their years of experi-
ence. It was made very clear that the torn hymen and enlarged
vagina were conditions that existed well before the admission
of October 29, 1982. The facts which formed the basis of the
expert's opinions supported their conclusions. Dr. Dziura stated
that the bruises on the ears were extremely suggestive of forced
oral sex. Dr. Bailey also linked the bruises to abuse. Further,
they had ruled out other causes of death.

Dr. Bailey said he based his opinion in part on his interview
with the defendant. That fact alone does not make the opinion
inadmissible. See *Simon* v. *Solomon, supra* at 105. Cf. *Com-
monwealth* v. *Gardner,* 350 Mass. 664, 666-667 (1966).[3] Simi-
larly, there was no problem with Dr. Dziura's basing his opin-
ion on his consultations with Dr. Bailey and Dr. Sturner since
they all testified. See *Commonwealth* v. *Rucker,* 358 Mass.
298, 299 (1970). Thus, the expert testimony was properly
admitted. That the defendant's expert refuted some of the con-
clusions of the Commonwealth's experts, was for the jury to
consider.

---

[3] In *Commonwealth* v. *Gardner, supra* at 666-667, the court found that
the medical expert had based his opinion that the intercourse amounted to
rape on factors outside his professional competence, i.e., the emotional
state of the victim and the victim's statement of what happened. In *Simon*
v. *Solomon, supra* at 105, however, the court found that the psychiatric
expert's reliance on the defendant's "appearance" of sincerity was properly
admissible as an explanation of the basis of his opinion.

In the present case, Dr. Bailey was within his area of expertise when he
opined that the defendant's version of what happened on the morning of
October 29, 1982, was inconsistent with the medical findings and when he
testified regarding the cause of death. Furthermore, the defendant himself
testified as to his memory of the events on the day of the incident. See
*Commonwealth* v. *Rucker,* 358 Mass. 298, 299 (1970). Even where an
expert may have been exposed to hearsay in the investigation of the case,
his opinion may be admitted where based "primarily, if not exclusively,
on facts [the expert] himself observed and testified to." *Commonwealth* v.
*Harris,* 1 Mass. App. Ct. 265, 267, aff'd on other grounds, 364 Mass. 236
(1973).

3. *Sufficiency of the evidence.* The defendant contends that, absent the medical expert's testimony, there was insufficient evidence to convict the defendant. Since we conclude that the expert testimony was properly admitted, the premise on which this argument is based is missing. We need say no more.

4. *Relief under G. L. c. 278, § 33E.* We have reviewed the whole case on the law and the facts, and we determine that there is no substantial likelihood that a miscarriage of justice has occurred. See *Commonwealth* v. *Toney,* 385 Mass. 575, 588 (1982); *Commonwealth* v. *Tavares,* 385 Mass. 140, 157-158, cert. denied, 457 U.S. 1137 (1982).

No one disputes that the defendant was the only person with the child when she stopped breathing on October 29, 1982, and was taken by him to the coffee shop to get someone to drive them to the hospital. Dr. Chester Franczyk, who treated the victim on October 28, 1982, for gastroenteritis, stated that he did not observe the marks on the child's ears. The defendant himself testified that those marks were not there when he and the child were at the coffee shop on the morning of October 29, but were there when he took the child to the hospital. He claims that they occurred when he slapped her to try to revive her. There was expert medical testimony to the effect that the pinch marks on the ears were extremely suggestive of forced oral sex. The defendant testified that, on one occasion when the child returned from a visit with her natural father, she looked at the defendant, and said, "He made me eat cockies, he made me drink peepees." There was ample evidence from which the jury could conclude that the child was a victim of sexual abuse, that her death resulted from such abuse, and that it was the defendant, the only person with her at the time, who inflicted the trauma that caused her death. We see no reason to grant relief under G. L. c. 278, § 33E.

*Judgments affirmed.*