COMMONWEALTH *vs.* ARTHUR L. WOODS. No. 93-P-114. April 27, 1994. *Evidence*, Expert opinion, Admissions and confessions, Arrest record. *Witness*, Expert. *Controlled Substances. Practice, Criminal*, Judicial discretion. *Error*, Harmless. *Constitutional Law*, Admissions and confessions. Further appellate review granted, 418 Mass. 1104 (1994).

The defendant was convicted by a jury in the District Court of distributing cocaine and doing so within a school zone. His principal contentions on appeal are that expert testimony from two police officers exceeded the bounds of propriety and that, in the absence of evidence that Miranda warnings had been given, testimony that, during the booking process, the defendant said that he was unemployed should not have been allowed. There was error, but we find it to have been harmless. We therefore affirm.

Two Boston police officers testified about the alleged drug transaction. From a distance of between twenty-five and fifty yards, Officer Robert

Luongo, with binoculars, along with Officer Santos Perez, were observing the defendant, standing in front of 37 Standish Street in Dorchester, when they saw a woman approach, converse with him briefly, and hand him what appeared to be money in exchange for an object. The woman placed the object in her mouth and retreated into an automobile. Believing that a drug transaction had taken place, the officers followed the vehicle, losing sight of it for about thirty seconds as it turned a corner, and stopped it about a quarter of a mile from where they had observed the transaction. Upon request from Officer Luongo, the woman removed from her mouth a small package wrapped in tin foil, later found to contain crack cocaine. The officers returned to find the defendant in the same location, sipping iced tea. He was placed under arrest. He had $207, but no drugs, on his person.

1. *Expert testimony.* The officers' experience in investigating narcotics traffic was established, and the defendant does not question on appeal their qualifications to offer opinions based upon that expertise. They testified, properly, as to certain general practices of street drug dealers. To explain the absence of drugs on the defendant's person, they described the practice of secreting a "stash" of drugs nearby, and they discussed the significance of buyers and sellers placing small packets of drugs in their mouths for easy disposal. See *Commonwealth* v. *Johnson,* 410 Mass. 199, 202 (1991); *Commonwealth* v. *Johnson,* 413 Mass. 598, 603-604 (1992); *Commonwealth* v. *Munera,* 31 Mass. App. Ct. 380, 385 (1991); *Commonwealth* v. *Cordero,* 34 Mass. App. Ct. 923, 924-925 (1993). Over objection, Officer Luongo also testified that in his opinion "a drug transaction had taken place," and that he believed that the defendant was selling crack cocaine. So too did Officer Perez testify, over objection, as to his belief that the defendant was involved in a drug transaction. Upon being asked why he arrested the defendant,[1] Officer Luongo responded: "We believe we observed a sale, we stopped the buyer, recovered the product. It is our belief that he was selling crack cocaine, which is why I went back to place him under arrest."

Expert testimony is generally admissible, in the broad discretion of the judge, whenever it will aid the jury in reaching a decision, even if the expert's testimony touches on the ultimate issues that the jury must decide. *Commonwealth* v. *Cordero,* 34 Mass. App. Ct. at 924-925, citing *Commonwealth* v. *Pikul,* 400 Mass. 550, 554 (1987). An expert may not, however, proffer an opinion as to the guilt or innocence of the defendant. *Commonwealth* v. *Ross,* 339 Mass. 428, 435 (1959). *Commonwealth* v. *Gardner,* 350 Mass. 664, 666-667 (1966). *Commonwealth* v. *Montmeny,* 360 Mass. 526, 528-529 (1971). *Commonwealth* v. *Hesketh,* 386 Mass. 153, 161-162 (1982). *Commonwealth* v. *Lennon,* 399 Mass. 443, 445-446

---

[1] Although there was no objection to this question, it was obvious, in light of counsel's numerous earlier objections, what the judge's ruling would have been.

(1987). *Commonwealth* v. *Cordero*, 34 Mass. App. Ct. at 924. Testimony from a police officer, in circumstances such as these, to the effect that a defendant was engaged in drug dealing or selling crack cocaine constitutes an opinion of guilt. See *Commonwealth* v. *Cornish*, 28 Mass. App. Ct. 173, 177 (1989). Such testimony is unnecessary, and it tends to usurp the jury's function of drawing inferences from the facts. See Liacos, Massachusetts Evidence 358 (6th ed. 1994). The testimony from both officers crossed the line between touching upon an ultimate issue and commenting on the defendant's guilt. Thus, it was error to allow the testimony.

We may find an error harmless only if we are sure it did not influence the jury, or had but very slight effect. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994); *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). Given the strength of the Commonwealth's case, we conclude that the admission of the improper testimony was not substantially prejudicial. In addition to the observations of the two officers, drugs were discovered in the alleged buyer's mouth almost immediately after her encounter with the defendant, evidence which gave rise to a strong inference as to the nature of the encounter. Moreover, the improper testimony went only slightly beyond the opinions offered which *were* admissible, namely, the characteristics of a hand-to-hand transaction, the storage of drugs in the mouth, and the opinion that such behavior is consistent with drug dealing. It was clear to the jury that the opinion testimony was based upon the officers' observations and not on facts not in evidence, see *Commonwealth* v. *Lewandowski*, 22 Mass. App. Ct. 148, 150 (1986), and it did not exceed the bounds of the officers' expertise. Contrast *Commonwealth* v. *Gardner*, 350 Mass. at 666.

2. *Booking questions regarding employment.* While being booked at the police station after his arrest, the defendant was asked a number of routine questions. He was also asked his occupation, and, according to testimony from Officer Perez, he responded that he was an unemployed hairdresser. There is no evidence that the defendant had been given Miranda warnings. When defense counsel objected as Officer Perez was first being asked about the booking process, the judge called a bench conference, but, due to equipment failure, it was unrecorded. The witness was then allowed, over objection, to give the testimony in issue. Defense counsel asked permission to repeat her objection on the record, but was assured by the judge that the sidebar conference had been recorded. No effort has been made by appellate counsel, however, to reconstruct the record of the sidebar discussion. See Mass.R.A.P. 8(c) & (e), as amended, 378 Mass. 933-934 (1979); *Commonwealth* v. *Rosenfield*, 20 Mass. App. Ct. 125, 127 (1985). Consequently, on the record before us, we are left to speculate whether the basis of defense counsel's objection was the failure to give Miranda warnings and what the prosecutor might have indicated as to whether the warnings had been given.

Routine booking questions, that is, "biographical data necessary to complete booking or pretrial services," *Pennsylvania* v. *Muniz*, 496 U.S. 582, 601 (1990) — name, address, height, weight, eye color, and date of birth — may be asked without the Miranda warnings because they are not usually designed to elicit incriminatory admissions. See *Commonwealth* v. *Acosta*, 416 Mass. 279, 283 (1993). The Commonwealth suggests that information about employment, although not one of the subjects mentioned in either the *Muniz* or *Acosta* case, is routine and potentially useful for purposes of locating a defendant should he be released from custody. However, we suggested strongly in *Commonwealth* v. *Guerrero*, 32 Mass. App. Ct. 263, 268 (1992), that where possession of cash and lack of employment are linked to suggest drug dealing, booking questions about employment have obvious potential to incriminate the accused and should not be asked without first giving him the Miranda warnings. See also *Proctor* v. *United States*, 404 F.2d 819, 820-821 (D.C. Cir. 1968). Contrast *People* v. *Abdelmassih*, 217 Ill. App. 3d 544, 549 (1991); *Commonwealth* v. *Jasper*, 526 Pa. 497, 503 (1991). Following the reasoning in *Commonwealth* v. *Guerrero*, we would have considered it error to allow the testimony in this case if a proper objection had been made, and the Commonwealth had failed to establish that timely Miranda warnings had been given. Given the record before us, further proceedings in the District Court would be required to make those determinations. See *Commonwealth* v. *Harris*, 376 Mass. 74, 78-80 (1978); *Commonwealth* v. *Chatman*, 10 Mass. App. Ct. 228, 232 (1980). We would not order a remand for that purpose, however, unless we viewed the possibly erroneous admission of the testimony, in combination with the erroneous admission of the expert testimony, as prejudicial.

During his closing argument, the prosecutor sought to connect the defendant's unemployment to his possession of $207. However, as the amount of money involved was not large, we do not think the defendant's employment status could have been a significant factor for the jury. Essentially, we are persuaded that the other evidence of the defendant's guilt was straightforward and convincing. Unless the two police officers were lying, the conclusion was virtually inescapable that they observed the defendant selling a packet of crack cocaine, and neither of the errors related to evidence affecting the officers' truth-telling propensities. Thus, even in combination, we consider the errors harmless.

3. *Other issues.* The evidence was sufficient to warrant the verdicts, including the verdict on the charge of distributing drugs within a school zone, and the instructions on that offense, to which there was no objection, were adequate. The judge did not abuse his broad discretion in limiting cross-examination.

*Judgments affirmed.*

*Kevin S. Nixon* for the defendant.
*James J. Villani* for the Commonwealth.