COMMONWEALTH vs. ARTHUR L. WOODS.

Suffolk. October 4, 1994. - January 24, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* Failure to make objection, Admissions and confessions. *Arrest. Constitutional Law,* Arrest. *Evidence,* Expert opinion. *Error,* Harmless.

This court declined to consider a Miranda issue in a criminal appeal that was not properly preserved for review by a pretrial motion to suppress or a motion for voir dire or a "seasonable objection" apparent on the record of the trial. [369-372, 374]

No substantial risk of a miscarriage of justice was created by the admission in evidence of a certain response of the defendant to police officers' questions at booking regarding his employment status, in view of the Commonwealth's strong case against the defendant. [372]

Discussion of exceptions to the Miranda requirement for "routine booking questions" as that issue was considered by the United States Supreme Court in *Pennsylvania* v. *Muniz,* 496 U.S. 582, 601 (1990). [372-374]

At a criminal trial, the judge's admission in evidence of police officers' expert opinions that the defendant was involved in a drug sale was error as·it was unnecessary and impermissibly intruded on the jury's fact finding function [374-375]; however, the error was harmless in light of the strength of the Commonwealth's case against the defendant [375-376].

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on May 6, 1992.

On transfer to the jury session of that court, the case was tried before *R. Peter Anderson, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kevin S. Nixon* for the defendant.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant was convicted by a jury in the District Court of distribution of cocaine and distribution of cocaine within 1,000 feet of a school. His sentences have been stayed pending appeal. The Appeals Court determined that evidentiary errors occurred at trial, but held that the errors were harmless and thus affirmed the defendant's convictions. 36 Mass. App. Ct. 950 (1994). We granted the defendant's application for further appellate review.[1]

On further appellate review, the defendant asserts two claims. First, he argues that his answer to a booking question concerning his employment status was improperly admitted because there was no evidence at trial that the police had informed him of the Miranda warnings before asking him about his occupation. Second, he asserts that the trial judge erred in admitting the arresting officers' expert opinion testimony that the defendant had committed the charged offenses. We conclude that the defendant did not adequately preserve the first issue for appellate review. We also conclude that, although the police officers' testimony was improperly admitted, the error was not prejudicial. Therefore, we affirm the defendant's convictions.

We summarize the evidence presented at trial. Two Boston police officers, Robert Luongo and Santos Perez, testified about the alleged drug transaction. At a distance of from twenty-five to fifty yards, the two officers observed the defendant standing in front of 37 Standish Street in the Dorchester section of Boston. Officer Luongo used binoculars to observe the defendant. The officers saw a woman approach the defendant and engage him in conversation. She gave the

---

[1] In his application for further appellate review, the defendant states the issues to be presented to this court: "This case offers the Supreme Judicial Court the opportunity, first, to breathe life into the apparently moribund concept 'harmless error' as it extends to the Appeals Court's review of District Court trials of drug charges, and, second, to address whether certain 'routine' booking questions-and-answers, routinely argued by prosecutors as evidence of guilt, are admissible absent evidence of *Miranda* warnings." The application was granted on this basis. 418 Mass. 1104 (1994). Accordingly, we consider only these issues. For disposition of the other issues, see *Commonwealth* v. *Woods*, 36 Mass. App. Ct. 950, 953 (1994).

defendant what appeared to be money in exchange for an object. The woman walked away from the defendant, placed the object into her mouth, entered a vehicle, and drove away.

Believing that a drug transaction had occurred, the officers followed the automobile and stopped it about one-quarter mile from where they had observed the exchange. At Officer Luongo's request, the woman removed from her mouth a small package wrapped in tin foil.[2] The officers returned to 37 Standish Street and found the defendant still there. They arrested him, and found $207 on his person. The defendant did not have any drugs on his person at the time of his arrest.

Officers Luongo and Perez both testified as to certain general practices of street drug dealers. They explained the absence of drugs on the defendant's person by describing how street drug dealers secrete a "stash" of drugs nearby. They also explained the significance of buyers and sellers placing small packages of drugs in their mouths for easy disposal. Over objection, Officer Luongo testified that, in his opinion, "a drug transaction had just taken place." When asked why the officers arrested the defendant, Officer Luongo stated: "We believe we observed a sale, we stopped the buyer, recovered the product. It is our belief that he was selling crack cocaine, which is why I went back to place him under arrest." Officer Perez also testified, over objection, to his belief that the defendant was involved in a drug transaction.[3]

While being booked at the police station after his arrest, the defendant was asked a number of routine questions. Officer Perez testified that, when the defendant was asked his occupation, he responded that he was an unemployed hairdresser. There was no evidence that the police had given the defendant Miranda warnings before asking him about his employment status. Defense counsel objected when Officer Perez was first asked about the booking process, but that was

---

[2]Subsequent laboratory tests indicated that the package contained crack cocaine.

[3]The defendant does not challenge the credentials of the officers as expert witnesses.

before any mention was made of the defendant's occupation.[4] The judge called a bench conference, and overruled the objection.[5] The prosecutor then asked Officer Perez about the defendant's statement regarding his occupation. Defense counsel made no objection to this question or motion to strike the answer.

1. *Booking question about employment.* On appeal, the defendant alleges that his statement during booking that he was unemployed should have been suppressed because there was no evidence at trial that the police had given him Miranda warnings before asking him about his occupation.[6] We conclude that the defendant failed to preserve the issue for appeal. See *Nancy P.* v. *D'Amato*, 401 Mass. 516, 524 (1988) (where counsel fails to make proper objection, appel-

---

[4]During direct examination by the prosecutor, Officer Perez's testimony about the booking procedure was as follows:

THE PROSECUTOR: "And what occurred next?"

THE WITNESS: "Then, uh, he was booked. And after that, placed in a cell."

THE PROSECUTOR: "And were you present when any of the booking questions were asked?"

THE WITNESS: "Yes, I was."

THE PROSECUTOR: "And was there a question about —"

DEFENSE COUNSEL: "Objection. Can we approach the bench, Judge?"

(Here the transcript indicates "[sidebar discussion: whispers]".)

THE JUDGE: "Objection overruled."

THE PROSECUTOR: "Were you present when the questions were asked about the Defendant's employer?"

THE WITNESS: "Yes, I was."

THE PROSECUTOR: "And what was his answer to the question about employment?"

THE WITNESS: "One of the questions was Occupation. And he says he was an unemployed hairdresser."

[5]The bench conference was not recorded. Defense counsel made no effort to reconstruct the record of that bench discussion for appellate review. See Mass. R. A. P. 8 (c) and (e), as amended, 378 Mass. 932 (1979). Therefore we cannot know what counsel and the judge discussed at sidebar.

[6]Unless there is full compliance with the standards prescribed by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), a statement obtained by custodial interrogation is inadmissible at trial. See *Commonwealth* v. *Garcia*, 379 Mass. 422, 430 (1980). See also P.J. Liacos, Massachusetts Evidence § 9.6.1, at 558 (6th ed. 1994).

late review of ruling is generally precluded); *Commonwealth v. Comtois*, 399 Mass. 668, 674 (1987) (same).

The proper method for challenging the admissibility of a statement allegedly obtained in violation of the Miranda standards is a pretrial motion to suppress or a motion for a voir dire. See Mass. R. Crim. P. 13 (c) (2), 378 Mass. 871 (1979); P.J. Liacos, Massachusetts Evidence § 9.10, at 605 (6th ed. 1994). The defendant, however, did not challenge the admissibility of his statement by either of these methods, nor has he established on appeal any reason to excuse his failure to do so.

In certain very limited circumstances, a defendant may object at trial to the admission of statements allegedly made without benefit of Miranda warnings, even where the defendant has not adhered to the preferred procedure of a pretrial motion to suppress or for a voir dire.[7] In *Commonwealth v. Adams*, 389 Mass. 265 (1983), we stated that, "[e]ven if the defendant has not moved to suppress his statements the burden is still on the Commonwealth, *upon seasonable objection*, to prove affirmatively, prior to the admission of [the defendant's] statements, that the statements were properly obtained and that the defendant waived his rights" (emphasis added). *Id.* at 269-270. In this case, however, the inadequate record does not enable us to conclude that the defendant did make a "seasonable objection."

The defendant argues that "defense counsel's objection should be treated as a general one for which the ground was obvious." Our review of the transcript does not support this assertion. The defendant objected to an inquiry about booking before the prosecutor asked any question about employment. Instead, the objection interrupted a question beginning, "And was there a question about." At that point, it was

---

[7]For example, a claim of involuntariness may be raised by trial objection leading to a voir dire and application of the common law "humane practice" doctrine. See *Commonwealth v. Paszko*, 391 Mass. 164, 179-183 (1984); *Commonwealth v. Tavares*, 385 Mass. 140, 149-150, cert. denied, 457 U.S. 1137 (1982). We do not believe that any such claim is present here.

not clear that the solicited testimony was inadmissible. We also note that the defendant did not object to the prosecutor's specific question concerning the defendant's employment status.[8]

The defendant has made no effort to reconstruct the record of the sidebar discussion for appellate review. See Mass. R. A. P. 8 (c) and (e), as amended, 378 Mass. 932 (1979).[9] The burden is on the appellant to ensure that an adequate record exists for an appellate court to evaluate. Indeed, rule 8 provides ample opportunity to supplement the trial record. Despite this opportunity, and despite the fact that the Appeals Court noted that the record was insufficient as to this issue, defense counsel failed to supplement the record for our review. Indeed, defense counsel stated both in his brief and at oral argument that the record "clearly show[ed]" the basis

---

[8]The defendant did not move to strike Officer Perez's testimony about the defendant's booking statement that he was unemployed, nor did the defendant file a motion in limine to bar the prosecutor from mentioning that statement in closing argument. See *Commonwealth* v. *Guerrero*, 32 Mass. App. Ct. 263, 268 (1992).

[9]Rule 8 (c) provides: "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may, within thirty days after the notice of appeal is filed, file a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may file objections or proposed amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments thereto shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal."

Rule 8 (e) provides: "If any difference arises as to whether the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the lower court, either before or after the record is transmitted to the appellate court, or the appellate court, or a single justice, on proper suggestion or on its own motion, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to a single justice."

of the objection and that he therefore determined not to re-construct the record of the sidebar discussion.

Despite this, we cannot determine on the record before us whether the defendant asserted below that he did not receive Miranda warnings before booking, nor can we conclude that the defendant timely objected and adequately preserved the issue for appeal. We decline to speculate about what occurred during the sidebar discussion. In the absence of a timely objection, our review is limited to whether there is a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *De La Cruz*, 405 Mass. 269, 275 (1989). *Commonwealth* v. *Silva*, 401 Mass. 318, 329 (1987). In view of the Commonwealth's strong case against the defendant apart from the testimony now challenged, we conclude that there was no such risk.

However, we believe that, in view of the significant public interest in protecting the Miranda rights of criminal defendants, we must express briefly our opinion on this issue. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). See also *Tamerlane Corp.* v. *Warwick Ins. Co.*, 412 Mass. 486, 489 n.5 (1992); *Guardianship of Weedon*, 409 Mass. 196, 197 (1991). We believe that, where an arrestee's employment status may prove incriminatory, the police must give Miranda warnings before asking questions about employment.[10]

In *Pennsylvania* v. *Muniz*, 496 U.S. 582, 601 (1990), the United States Supreme Court held that "routine booking question[s]" may be asked without Miranda warnings because such questions are not usually designed to elicit incriminatory statements. The Court stated that the "routine

---

[10]We express our view as matter of Federal law only. We do not rely on art. 12 of the Declaration of Rights of the Massachusetts Constitution since the defendant makes no separate State constitutional argument. We note that it appears thus far, that State case law and Federal case law are consistent on the point. For a collection of Federal and State cases, see *Commonwealth* v. *Kacavich*, 28 Mass. App. Ct. 941, 941-942 (1990). See also *Commonwealth* v. *Guerrero*, 32 Mass. App. Ct. 263, 267-268 (1992). We have not yet fully decided the issue as matter of State constitutional law. See *Commonwealth* v. *Acosta*, 416 Mass. 279, 283-284 (1993).

booking question" exception "exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services." *Id.*, quoting *United States* v. *Horton*, 873 F.2d 180, 181 n.2 (8th Cir. 1989). As examples of permissible routine booking questions, the Court cited questions regarding an arrestee's name, address, height, weight, eye color, date of birth, and current age. *Muniz*, *supra* at 601, 602. The Court noted that such questions "appear reasonably related to the police's administrative concerns [and hence] fall outside the protections of *Miranda*." *Id.* at 601-602.

Recognizing an exception to the Miranda requirement for "routine booking question[s]" does not mean that *any* question asked during the booking process falls within that exception. Unless they first give the arrestee Miranda warnings or obtain a waiver of those rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions. *Id.* at 602 n.14. For example, in *Muniz*, where the defendant had been arrested for driving while intoxicated, the Court held that the police should have administered Miranda warnings before asking the defendant the date of his sixth birthday. *Id.* at 600, 605. Although the police were not interested in the date of Muniz's sixth birthday, but rather in his ability to calculate it, the Court concluded that the *content* of his answer (that he did not know the date of his sixth birthday) had potential to incriminate him because it supported an inference that his mental faculties were impaired. *Id.* at 599. Because of this potential, the Court held that the police, in order to protect Muniz's privilege against self-incrimination under the Fifth Amendment to the United States Constitution, should have given Muniz the Miranda warnings before asking him that question. *Id.*

The reasoning of the *Muniz* decision applies with equal force to booking questions about employment in cases involving drug charges. Although a booking officer proceeding down a litany of routine questions may have no investigatory purpose in asking the arrested person how he is employed, the *content* of that person's response may be incriminating.

For example, in drug cases such as the instant one, an arrestee's statement that he is unemployed may prove incriminating where the arrestee possessed a substantial amount of cash at the time of the arrest.[11] Further, an arrestee's employment status seems less relevant to the police in performing their custodial responsibilities than the information gleaned from those questions identified by the *Muniz* Court, *supra* at 601, as "routine booking question[s]."

As noted above, our reflections on the *Muniz* case do not influence our analysis of the defendant's case because the defendant did not properly preserve this issue for appeal. The record does not show that the defendant argued at trial that his statement about his unemployment was inadmissible because he had not received timely or adequate Miranda warnings. He cannot now attempt to argue on appeal an issue that rests on the assumption that he had not received adequate Miranda warnings when he was booked.

2. *Expert testimony.* The defendant also asserts that the expert testimony of Officers Luongo and Perez crossed the line between touching on an ultimate issue and commenting on the defendant's guilt. Although we agree that it was error to allow the testimony, we conclude that the error was harmless.

A trial judge has broad discretion with respect to the admission of expert testimony.[12] *Commonwealth* v. *Colin C.,* ante 54, 59 (1994). *Commonwealth* v. *Dockham,* 405 Mass. 618, 628 (1989). Expert testimony is generally admissible whenever it will aid the jury in reaching a decision. *Id.* *Commonwealth* v. *Pikul,* 400 Mass. 550, 553 (1987). An opinion within the domain of the expert's professional knowledge may be admissible even if the expert's testimony touches on

[11]We note that in closing argument, the prosecutor did link the defendant's possession of $207 and his unemployed status to support an inference that the defendant was a drug dealer.

[12]The officers' experience in investigating narcotics cases was established at trial, and the defendant does not challenge on appeal their qualifications to offer opinions based on their expertise. See *Commonwealth* v. *Johnson,* 413 Mass. 598, 603-604 (1992).

the ultimate issues before the jury. *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982), citing *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 (1977).

An expert may not, however, offer an opinion as to the defendant's innocence or guilt. *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982). Although the question is a close one, we agree with the Appeals Court, 36 Mass. App. Ct. at 952, that, in this case, the police officers' testimony that the defendant was involved in a drug sale was, in effect, expert opinion that the defendant was guilty of the charges. Such expert opinion testimony was unnecessary and impermissibly intruded on the jury's vital fact finding function. *Commonwealth* v. *Ianello*, 401 Mass. 197, 202-203 (1987). But see *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991) (police detective, experienced with narcotic trade, properly allowed to express opinion that amount of cocaine possessed by defendant was "consistent with an intent to distribute").[13] The jury, given the facts and the expert testimony about the general practices of street drug dealers, could draw their own conclusions about the defendant's guilt or innocence. The officers' testimony exceeded the bounds of admissible expert testimony, and it was error to allow it.

We conclude, however, that the error was harmless. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). In light of the strength of the Commonwealth's case, the admission of the improper testimony was not substantially prejudicial. The Commonwealth presented the firsthand accounts of

---

[13]Both officers testified, as a matter of their expert opinion, that a drug transaction had taken place. Officer Luongo testified: "Basically in my opinion, with what I've witnessed throughout my time on the job was just . . . a drug transaction had just taken place." Officer Perez testified as follows: *Q.*: "And do you have an opinion on what you observed between the female and the Defendant when you saw that hand-to-hand transaction?" *A.*: "Yes." *Q.*: "And what was that opinion?" *A.*: "It was a drug transaction." Both officers also testified that what they observed was "consistent with" a drug transaction. Had their testimony been limited to the "consistent with" observation, it would not have been error. See *Johnson, supra.* See also *Commonwealth* v. *Montmeny*, 360 Mass. 526, 528 (1971); Liacos, Massachusetts Evidence, *supra* at § 7.3, at 365-366, and cases cited.

Officers Luongo and Perez, who had observed the defendant's exchange with the woman who had approached him. In addition, at the officers' request, the woman removed a small package from her mouth almost immediately after her encounter with the defendant. This evidence gave rise to a strong inference as to the nature of the transaction. Furthermore, the improper testimony went only slightly beyond the opinions offered which were admissible, namely, that a hand-to-hand transaction, and the storage of drugs in the mouth, are consistent with drug dealing. Accordingly, we affirm the defendant's convictions.

*Judgments affirmed.*