COMMONWEALTH VS. LISA TANNER.

No. 97-P-239.

Suffolk. February 17, 1998. - October 8, 1998.

Present: BROWN, GILLERMAN, & PORADA, JJ.

*Controlled Substances. Evidence,* Expert opinion. *Witness,* Expert. *Error, Harmless. Practice, Criminal,* Disclosure of evidence.

At the trial of complaints for distribution of cocaine, error in the judge's admission in evidence of a police officer's expert opinion that what he had witnessed was a "drug transaction" was not prejudicial, in light of the strength of the evidence against the defendant. [579-581] GILLERMAN, J., concurring.

This court commented on the better practice in confining opinion testimony so as not to intrude on the jury's role as fact finder. [581-582]

At a criminal trial, the Commonwealth's failure to disclose in discovery certain evidence that was not documented in any police report was not demonstrated to be prejudicial, where defense counsel was able to use the nondisclosure on cross-examination to impeach the credibility of the police officer who wrote the reports. [582-583] GILLERMAN, J., concurring.

COMPLAINT received and sworn to in the Boston Municipal Court Department on July 12, 1996.

The case was tried before *Herbert H. Hershfang,* J.

*Timothy M. Farris* for the defendant.

*Amanda Lovell,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant, Lisa Tanner, was convicted of distribution of a class B controlled substance and distribution of a class B controlled substance within 1,000 feet of a school zone.[1] On appeal, she contends that the trial judge erred (1) in allowing in evidence (a) opinion testimony from a police officer

---

[1] A count for conspiracy to distribute a class B controlled substance was dismissed with the consent of the defendant after she was convicted of the other two charges. See in this regard Mass.R.Crim.P. 9(e), 378 Mass. 861 (1979).

as to her guilt and (b) unfair prejudicial comments regarding an uncharged drug transaction, and (2) in denying a motion for a mistrial when it became apparent that she had not been provided with significant pretrial discovery material. See, e.g., *Commonwealth* v. *Gallarelli*, 399 Mass. 17, 20-21 & n.5 (1987). She also contends that, cumulatively, these errors created a substantial risk of a miscarriage of justice. In addition, she claims ineffective assistance of counsel. Although this may not have been the Commonwealth's finest hour, we are constrained to affirm. We will, however, discuss a grave concern we have with the manner in which the Commonwealth routinely utilizes expert testimony.

On July 11, 1996, at 10:30 P.M., Officer William Feeney of the Boston police department drug control unit conducted surveillance at the intersection of Tremont and Stuart Streets in front of a Christy's Market. Feeney surveyed the area through binoculars from the inside of a vehicle parked approximately 250 to 300 feet away. At trial, he testified that a woman and a man, later identified as the defendant and Charles Gomes,[2] were standing together in front of Christy's when a white woman approached them and began talking. The woman handed Gomes some cash; he then spit an item out of his mouth, placed it into her hand, and she walked away.

Defense counsel objected to this portion of Feeney's testimony on the ground that it had not been disclosed during discovery. At sidebar, the judge overruled the objection, ruling the testimony admissible for the limited purpose of showing knowledge. See *Commonwealth* v. *Stewart*, 411 Mass. 345, 354 (1991). See also Liacos, Massachusetts Evidence § 4.4.7 (6th ed. 1994). He then gave a limiting instruction to the jury.[3]

When direct examination resumed Feeney stated, "[F]rom my experience, I believed a drug transaction had taken place." Trial counsel objected, claiming that the officer was comment-

[2]Gomes was tried jointly with the defendant and convicted of the same two offenses.

[3]The judge told the jury: "The objection has been overruled, but I want the jury to understand that the evidence that we're about to hear should not be used in any way by you to reflect on the guilt of either of these defendants, because the event now being portrayed is not part of the charge in this case. And you are to use it, if you wish, only for the purpose of indicating the surrounding circumstances. So that when we deal with the issues or the facts that are alleged here, the charge in this case, you may or may not want to pay attention to this incident as laying groundwork if you will."

ing on the guilt or innocence of the defendant. The judge responded: "No. The evidence may be used only to the extent that it's appropriate in the case, on the officer's state of mind. The officer said that that's what he believed happened. We're taking it for that limited purpose."

Next, the officer testified that ten minutes after the transaction with the unidentified white woman, he observed the defendant and Gomes talking. The defendant then reached toward the front of her pants, pulled out an item, and gave it to Gomes.[4] Gomes appeared to pull an item apart, put something in his hand, move his hand up to his open mouth, then throw a clear plastic bag on the ground. Moments after this incident, a black male, later identified as Nathan Gilbert, approached the defendant and Gomes. After a brief conversation, Gilbert handed Gomes money; Gomes spit something into his hand and gave it to Gilbert. After describing this incident, Feeney commented that it "was consistent with a drug deal also."[5] (There was no objection to this testimony.) Feeney testified that Gomes then handed the money he had received from Gilbert to the defendant. Defense counsel objected to this statement and moved to strike it on the ground that there was nothing in the discovery he had received about the transfer of money from Gomes to the defendant. (The defendant had approximately $700 in cash on her person when she was arrested.) The prosecution conceded that the information was not in the police report, but argued that a police report "doesn't always have to say everything." The trial judge, after hearing brief arguments from the parties, denied the motion.[6]

Gilbert was arrested and found with five small plastic bags of crack cocaine in his pocket. Soon thereafter, the defendant and

[4]On cross-examination Feeney admitted that the defendant's back was to him and he was unsure whether she put her hand in her pocket or reached into the front of her pants.

[5]In numerous cases the phraseology "consistent with" has been deemed sufficient to ameliorate the concerns raised in *Commonwealth v. Woods*, 419 Mass. 366, 375 (1995), that an expert "may not . . . offer an opinion as to the defendant's guilt or innocence." See discussion, *infra* at 580.

[6]On cross-examination, Feeney acknowledged that he had not written in his report that Gomes had passed money to the defendant or anything about the unidentified white female.

There is no question that evidence tending to impeach Feeney's credibility is exculpatory and material. *Commonwealth v. Vaughn*, 32 Mass. App. Ct. 435, 439-440 (1992).

Gomes were arrested. While approaching Gomes to arrest him, Feeney and the other officers noticed Gomes make a movement toward his mouth. They grabbed Gomes's hands and arms and wrestled him to the ground. When recalling the motion Gomes made towards his mouth, Feeney testified, over objection, "I felt it was consistent with, with the drug, the drug dealer with the drugs going into his mouth."[7]

1. *Expert testimony.* First, we address the defendant's claim that Feeney's testimony exceeded the permissible bounds of expert evidence; we will also comment briefly on the difficult and confusing area of police expert testimony. Without question, there are many potential pitfalls in permitting a percipient police witness such as Feeney to provide expert testimony. See, e.g., Note, The Admissibility of Ultimate Issue Expert Testimony by Law Enforcement Officers in Criminal Trials, 93 Colum. L. Rev. 231 (1993). It is easy for the line between specific observations and expert generalizations to become blurred in these situations. For this reason, when possible, the practice should best be avoided. However, this is certainly not to say that, with adequate care, error must necessarily result from the admission of such evidence.

On the two occasions at issue here, the Commonwealth presented Feeney with questions as to his opinion, based on the facts of the case at hand. This alone, however, did not render the officer's testimony improper. Questions grounded in previously admitted evidence may be posed to an expert witness calling for an opinion within the expert's field of expertise, even if the witness's reply thereby touches on the ultimate issue of the case. The only limitation is that the subject matter discussed be within the witness's field of expertise and that the witness not *directly* express his views on the defendant's guilt. See *Commonwealth* v. *Pikul*, 400 Mass. 550, 554 (1987); *Commonwealth* v. *Colin C.*, 419 Mass. 54, 59-60 (1994); *Commonwealth* v. *Cordero*, 34 Mass. App. Ct. 923, 924 (1993). Indeed, as with any witness, the Commonwealth is entitled — indeed expected — to focus the expert's testimony on the facts at hand.

The real problem is the form of Feeney's testimony. As noted,

---

[7]Feeney testified that he had been involved in several hundred surveillance operations and that it was common practice for drug dealers to keep drugs in their mouth for the purpose of destroying and swallowing them when the police approached to effect an arrest or conduct an investigation.

he stated at one point, "[F]rom my experience, I believed a drug transaction had taken place." Later he opined that Gomes's actions were "consistent with, with the drug, the drug dealer with the drugs going into his mouth." While in the latter instance Feeney used the talismanic "consistent with" locution that both this court and the Supreme Judicial Court have approved in numerous prior cases, see, e.g., *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991), the former statement is very similar to expert testimony that we held improper in *Commonwealth* v. *Woods*, 36 Mass. App. Ct. 950, 951-952 (1994), *S.C.*, 419 Mass. 366, 375 & n.13 (1995). Nonetheless, we do not believe that reversal is required in this case.[8] See and compare *Commonwealth* v. *Barbosa*, 421 Mass. 547, 555 (1995).

In *Woods*, 36 Mass. App. Ct. at 951, *S.C.*, 419 Mass. at 375 n.13, percipient police witnesses opined that "a drug transaction had taken place" and one police witness testified that he believed that "the defendant was selling crack cocaine." These statements are the functional equivalent of the first contested remark here. Such testimony amounts to a personal assurance by the witness that the crime charged had occurred, and thereby constitutes an improper intrusion into the fact-finding function of the jury. Admission of the statement in that form, therefore, was error.

However, in view of the strength of the Commonwealth's case here, including the physical evidence of the drugs taken from Gilbert, the $700 recovered from the defendant, and Feeney's detailed eyewitness testimony, it is unlikely that Feeney's improper comment was a decisive factor for the jury. Contrast *Commonwealth* v. *Lovejoy*, 39 Mass. App. Ct. 930, 932 (1995). Even without such testimony, the jury would have known that Feeney believed that Gomes and the defendant had been involved in drug sales. The improper comment was made in reference to a transfer that was *not* part of the conduct upon which the complaint was based, further reducing the possibility for prejudice. As in *Woods*, 36 Mass. App. Ct. at 952, *S.C.*, 419 Mass. at 375-376, the erroneous admission of the expert testimony was insufficiently prejudicial to require relief. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 645-646 (1997)

---

[8]Although Officer Feeney's two statements would generally be admissible, we do believe that the Commonwealth is pushing the envelope of permissible expert opinion testimony.

(where Commonwealth's evidence is strong, no retrial required despite fact that police expert testimony exceeded permissible limits).

In assessing whether expert evidence strays over the line in cases such as this, in the end the sole touchstone should not be whether a witness uses any particular figure of speech. Despite the continued emphasis in the case law on whether a police witness testifies simply that observed conduct was a drug transaction or (by virtue of better coaching) states instead that a defendant's actions were "consistent" with a drug transaction, such semantical differences almost certainly make no difference to jurors. Consequently, the determination whether evidence is within the proper scope of opinion testimony should not turn exclusively on the precise locution used.

Rather, in determining whether particular expert testimony is lawful, the better practice is to focus the analysis on whether the evidence is *explanatory*. The role of an expert witness is to help jurors interpret evidence that lies outside of common experience. See *Commonwealth* v. *Colin C.*, 419 Mass. at 59-60; *Commonwealth* v. *Munera*, 31 Mass. App. Ct. 380, 384-385 (1991); *Commonwealth* v. *Cordero*, 34 Mass. App. Ct. at 924. So long as expert testimony is directed to that purpose, it is admissible.

When testimony is presented in conclusory form, as in *Woods*, couched simply in terms of whether a defendant did or did not commit a particular offense, it serves no educative function. Such testimony amounts to little more than vouching for the Commonwealth's position. When the evidence comes from the mouth of a police expert witness, and so bears an official imprimatur, the likelihood for prejudice is great.

Applying this form of analysis, we think that the mere use of the "consistent with" formulation should not amount to a sure safe harbor for prosecutors. The better practice in drug cases, especially when an expert is a percipient witness, is to confine opinion testimony to the explanation of specific unusual or cryptic conduct, without stating, in any form, whether such conduct amounts to a criminal offense. Here, for example, Feeney could have simply explained that drug dealers often store their wares in their mouths and often hire confederates to hold large amounts of cash. There was no necessity for him to link these facts with his personal observations and conclude, in so many words, that the defendant was involved in illegal drug sales.

This type of testimony — regardless of whether the "consistent with" formulation is used — takes unfair advantage of the dual role of police officers in these circumstances. The testimony of a combined expert/percipient witness has unique persuasive value. Every effort should be made, therefore, to ensure that the Commonwealth does not press this advantage unfairly. In future cases, the government would be well advised to refrain from permitting police witnesses to state, in any form, whether conduct amounted to a drug sale. See *Commonwealth* v. *Cordero*, 34 Mass. App. Ct. at 924 (questions must be such as not to cause expert witness to comment on guilt or innocence). The expert's role is to explain; it is for the jury to reach the ultimate conclusions.[9]

2. *Failure to disclose evidence.* Next, the defendant claims that the Commonwealth failed to comply with pretrial discovery orders by not disclosing the details of Feeney's observations of the drug sales — details that ultimately were included in the officer's trial testimony.

Without question, the two most damaging pieces of evidence against the defendant were her presence during the first, uncharged transfer, and Gomes's transfer of money to her after the Gilbert transaction. Neither event was documented in the police report that was turned over to the defendant in response to her discovery request. However, as noted, Feeney ultimately provided detailed testimony regarding those events at trial. The failure to disclose this information was improper, but we do not think a retrial is required.

Although Feeney's testimony was an important part of the Commonwealth's case, the defendant has not suggested that foreknowledge of the substance of Feeney's trial testimony would have caused her to alter her trial strategy in any way. Moreover, on cross-examination defense counsel was able to use the fact that Feeney's testimony varied from the police report to impeach his credibility. There is simply insufficient prejudice to warrant any relief.

Although we have concluded that the Commonwealth's omission did not harm the defendant's case here, we by no means

---

[9]See and compare *Commonwealth* v. *Dockham*, 405 Mass. 618, 627-630 (1989), and *Commonwealth* v. *Mamay*, 407 Mass. 412, 421-422 (1990), exemplars of the line of cases holding that the same expert can testify to general characteristics of sexually abused victims, but not to percipient observations of victims in the particular case.

condone the government's conduct. As we stated in *Commonwealth* v. *Vaughn*, 32 Mass. App. Ct. 435, 440 (1992), quoting from *Commonwealth* v. *Pizzotti*, 27 Mass. App. Ct. 376, 382 (1989), a public prosecutor has a "continuing duty 'to disclos[e] all material which is even possibly exculpatory, as a prophylactic against reversible error and in order to save court time arguing about it.' " The Commonwealth here forgot this admonition and, as a result, very easily could have put the public to the needless expense of a second trial.

*Judgments affirmed.*

GILLERMAN, J. (concurring). I concur in part one of the majority opinion only in so far as it affirms the conviction on the authority of *Commonwealth* v. *Woods*, 419 Mass. 366, 374-376 (1995), and *Commonwealth* v. *Rivera*, 425 Mass. 633, 645-646 (1997). I join the majority in part two.