COMMONWEALTH *vs.* ANTHONY JAMES. No. 00-P-859. March 5, 2002. *Evidence, Hearsay, Identification, Opinion, Profile. Identification. Controlled Substances.*

In the defendant's jury-of-six trial in Boston Municipal Court on a complaint charging distribution of cocaine, G. L. c. 94C, § 32A, and doing so within 1,000 feet of a school, G. L. c. 94C, § 32J, "[the judge] gave no instruction whatsoever on the meaning of proof beyond a reasonable doubt." *Commonwealth* v. *Stellberger*, 25 Mass. App. Ct. 148, 149 (1987). Despite the Commonwealth's argument that this court should abandon the holding in *Stellberger, supra* at 149-150, in which we reversed Stellberger's conviction for lack of a reasonable doubt instruction, the role of this court is not to make new pronouncements on the fundamental issue of reasonable doubt instructions. Moreover, "[w]e [continue to] think it too clear for argument that omission [of a reasonable doubt instruction] constitute[s] error." *Id.* at 149. There must be a new trial.

We comment briefly on issues that may arise on retrial.

The Commonwealth presented the testimony of James Fong, an experienced Boston police officer, then serving as a sergeant detective in the drug control unit. While conducting surveillance from the fifth floor of a parking garage in the theater district, an area of Boston known for "high drug activity," Fong saw the following activity with the aid of a telescope. A man, later identified as Greg Williams, approached a red pickup truck, had a brief conversation with the occupants of the truck, and pointed to a nearby location. "[A] tall gentleman with a long jacket," later identified as the defendant, was standing on a street corner in the location to which Williams pointed. Williams walked toward the defendant, who handed an item to Williams. Williams returned to the truck, leaned into the cab, and then walked back toward the defendant and handed him what appeared to be cash.

Fong relayed what he was seeing to the four other officers working with him that evening over his police radio. In response to information from Fong, Officer Peter Chu watched the truck and saw Williams drop a small item into the passenger's hand and the passenger hand cash to Williams, who then walked away toward the defendant. Upon the arrest of Williams and the defendant, nothing was recovered from Williams; a twenty-dollar bill was recovered from the defendant. A bag of cocaine that Officer William Dwan testified would sell for between ten and twenty dollars was recovered from the pickup truck.

The defense attempted to cast doubt on Fong's identification of the defendant, both as to what Fong actually saw and what he could see from his

position five stories up in a parking garage. Fong originally had identified the defendant as the person who approached the truck and corrected himself only after being shown a police report. There is no dispute that the only one of the five officers who actually saw any connection between the defendant and Williams was Fong.

1. *Hearsay testimony.* The defendant claims error in the judge's failure to exclude, over defense counsel's persistent objection, the testimony of Officers Chu and Dwan repeating the description of the defendant they had received from Fong over the police radio. The defendant argues that the jury could have taken this testimony as substantive evidence of guilt. In the circumstances (which are unlikely to occur on retrial), where Fong's testimony originally misidentified the defendant and the prosecutor did not elicit clear testimony as to the descriptions of Williams and the defendant until her questioning on redirect, it might be a close question as to whether the repetition of the detailed testimony constituted prejudicial error. See *Commonwealth* v. *Daggett,* 416 Mass. 347, 352 n.5 (1993). Such repetition was unnecessary since it was not likely that without the testimony the officers would have been "put in the false position of seeming just to have happened upon the scene . . . ." *Commonwealth* v. *Cohen,* 412 Mass. 375, 393 (1992), quoting from *Commonwealth* v. *Miller,* 361 Mass. 644, 659 (1972). The jury were well aware of the police agenda for the evening.

2. *"Drug profile" testimony.* Before commencing his testimony about his observations from the parking garage, Fong testified at length about his training, his experience as a narcotics officer, including undercover buys, the appearance of cocaine, and its packaging. The prosecutor then asked Fong whether he had become "familiar with any steps that people selling crack cocaine in the area [the theater district] use to reduce the risk of being caught with crack cocaine on them?" In answer to this question, over objection, Fong testified about the usual involvement of two or three people who would divide responsibility for soliciting the sale, with one person holding the "product," i.e., "a stash," and the seller dealing only with money. He then described transactions consisting of one person taking something out of his mouth, dropping the item to the ground, and the purchaser taking the item off the ground and dropping money on the ground in its stead.

Later Fong testified that he directed other officers to stop the truck because he "believed [the truck was involved] in drug activity." The judge ordered the jury to disregard the testimony. Finally the prosecutor several times asked Fong, "[B]ased on your training and experience, what were the actions you observed consistent with that night?" The judge sustained defense counsel's repeated objections. We agree with the defendant that the prosecutor's attempt to introduce opinion testimony from a witness who had already served as a modus operandi expert on "how drug transactions are carried out on the street level," *Commonwealth* v. *Frias,* 47 Mass. App. Ct. 293, 296 (1999), as well as the key percipient witness, ran the risk of "trespass[ing] on the jury's prerogative as triers." *Id.* at 297.

Here that did not happen because the judge struck the first opinion and sustained the objection to the prosecutor's questions. The attempt to elicit testimony describing the activities of "people selling crack cocaine in the area [under investigation]" was potentially suspect as "profile" evidence. See *id.* at 296-297, and cases cited. As it happened, the answer did not appear to be

limited to the theater district. We trust that on retrial the prosecution will heed the recommendations of *Commonwealth* v. *Tanner,* 45 Mass. App. Ct. 576, 579-582 (1998), and *Commonwealth* v. *Frias, supra,* rather than risk having to participate in a third trial.

There is no merit to the defendant's argument that there was insufficient evidence to support the convictions.

*Judgments reversed.*
*Verdicts set aside.*

*Eugene F. Sullivan, Jr.,* for the defendant.
*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.