COMMONWEALTH *VS.* LANCIE ANDUJAR.

No. 01-P-1702.

Hampden. January 6, 2003. - March 6, 2003.    ·

Present: GREENBERG, LAURENCE, & GRASSO, JJ.

*Evidence,* Opinion. *Police Officer. Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Practice, Criminal,* Admissions and confessions, Comment by prosecutor.

At the trial of a criminal complaint charging the defendant with distribution of cocaine and distribution within 1,000 feet of a school zone, the judge erred in admitting in evidence testimony of a police officer that he believed that four interactions that he had witnessed involving the defendant were street level drug transactions [530-533], and this error, when viewed together with the prosecutor's impermissible commentary, during redirect examination of the officer, on the defendant's right to remain silent [533-537], required reversal.

COMPLAINT received and sworn to in the Holyoke Division of the District Court Department on October 2, 2000.

The case was tried before *William J. Boyle,* J.

*Jeanne M. Kaiser* for the defendant.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. Admission of opinion testimony from a police officer that the defendant had engaged in street level drug transactions and a redirect examination of the officer that implicated the defendant's right to remain silent are focal points of the defendant's appeal from convictions of distribution of cocaine and distribution within 1,000 feet of a school zone. We reverse the defendant's convictions because the error in admission of the officer's opinion cannot be deemed nonprejudicial when viewed together with the improper questions pertaining to the defendant's silence. See *Commonwealth* v. *Borodine,* 371 Mass. 1, 11-12 (1976), cert. denied, 429 U.S. 1049 (1977); *Com-*

*monwealth* v. *Burke*, 373 Mass. 569, 577 (1977). Moreover, the prosecutor's questions on redirect examination intruded upon the defendant's right to remain silent, and gave rise to a substantial risk of a miscarriage of justice.

*Background.* In the light most favorable to the Commonwealth, we recite facts that the jury could have found. On September 30, 2000, at about 8:15 P.M., Holyoke police Officer Paul Barkyoumb, who possessed considerable experience in narcotics investigations, was conducting drug surveillance at Suffolk and Beach Streets, an area of high narcotics activity. Within a ten-minute period, Barkyoumb observed four different instances in which an individual approached the defendant and engaged in brief conversation, following which the defendant reached into the branches of a nearby tree and removed an object. The defendant handed the object to the individual in exchange for cash that the defendant placed in his right front pants pocket.

At approximately 8:30 P.M., Barkyoumb observed a fifth such transaction with an individual, later identified as Thomas Rodriguez. Barkyoumb radioed Officer Sustache, who was nearby, and instructed him to locate and stop Rodriguez. In short order, Sustache stopped and arrested Rodriguez,[1] retrieving an object from Rodriguez's right front pocket that appeared to be (and upon analysis proved to be) cocaine.

After Rodriguez's arrest, Barkyoumb left his surveillance location and returned to the police station. There, he quickly enlisted the assistance of other officers in locating and arresting the defendant. Prior to arresting the defendant, Barkyoumb returned to the corner of Beach and Suffolk Streets and searched the tree for the suspected stash of drugs. None was found. Nor were any drugs, drug paraphernalia, or other accouterments of the drug trade found upon the defendant at his arrest. Barkyoumb did find $375, in denominations of five, ten, and twenty dollar bills, in the defendant's right front pants pocket.

1. *The expert opinion.* Notwithstanding the clear admonition of *Commonwealth* v. *Woods*, 419 Mass. 366, 374-375 (1995), and its progeny, see *Commonwealth* v. *Zavala*, 52 Mass. App.

---

[1]Rodriguez was out of sight of police for a short period following his interaction with the defendant.

Ct. 770, 775-776 (2001), on direct examination, the prosecutor impermissibly asked, and the judge improperly admitted, over objection, testimony that Barkyoumb believed the four interactions that preceded the transaction with Rodriguez to be street level narcotics transactions.[2] Common sense suggests that it would have been obvious to the jury that Barkyoumb believed this to be the case, otherwise the defendant would not have been arrested, indicted, and put to trial. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 646 n.13 (1997) (drug sales unfortunately so common in present society that almost any witness could draw inference that drug sales were occurring in described activities); *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 580 (1998) ("Even without such testimony, the jury would have known that [the officer] believed that . . . the defendant had been involved in drug sales"). Nevertheless, as the Commonwealth concedes, the case law has placed beyond disputation that testimony of the kind received from Barkyoumb is an opinion as to the defendant's guilt that intrudes impermissibly upon the jury's fact-finding function. See *Commonwealth* v. *Woods*, 419 Mass. at 375. If addressed at all, such inquiries should be couched in the approved "consistent with" locution. See *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991) (expert properly allowed to testify amount of cocaine found on defendant consistent with intent to distribute); *Commonwealth* v. *Gollman*, 436 Mass. 111, 116 (2002) (judge appropriately confined witness's opinion testimony to whether circumstances were consistent with personal use or intention to distribute); *Commonwealth* v. *Lopez*, 55 Mass. App. Ct. 741, 746 (2002).[3]

Because the defendant's objection preserved the point for ap-

---

[2]PROSECUTOR: "And based on your training and experience, what did you believe was occurring?"

BARKYOUMB: "Based upon my training and experience, I believe they were street narcotic transactions taking place."

[3]Barkyoumb's reference to a "stash" appears to suffer from a similar deficiency. See *Commonwealth* v. *Zavala*, 52 Mass. App. Ct. at 775-776. The reference was not descriptive of the general manner in which street level drug transactions occur but rather expressed a belief as to what the defendant was

peal, we consider the error under the prejudicial error standard of review. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). Standing alone, the erroneous admission of Barkyoumb's testimony might well fall within the ambit of cases where such an error was deemed harmless or nonprejudicial. See *Commonwealth* v. *Woods*, 429 Mass. at 375-376; *Commonwealth* v. *Rivera*, 425 Mass. at 645; *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 580. After all, Barkyoumb described five separate and distinctive transactions that involved brief conversation, the defendant's reaching into a tree for an object, and exchange of the object for cash that the defendant placed in his right pants pocket. Apprehension of Rodriguez a short time after the last transaction led to the discovery of cocaine in the very location where Rodriguez had placed the object received from the defendant, and upon his arrest, the defendant was found to have $375 in small denominations in the very pocket where Barkyoumb had observed him place the money received in each transaction. Compare *Commonwealth* v. *Kennedy*, 426 Mass. 703, 708 (1998) (experienced narcotics investigator could believe probable cause existed based upon "whole silent movie" in observed drug transaction).

The error, however, must be viewed together with the prosecutor's redirect examination, discussed below, that inquired as to the defendant's failure to offer an explanation for the large amount of cash found in his pocket upon his arrest. No drugs, paraphernalia, or accouterments of the drug trade were found on the defendant. Nor did police locate the supposed stash of drugs. Rodriguez's whereabouts prior to, and for a brief period after, the transaction were unknown. The area was one of high drug activity, and Rodriguez may have brought the drugs to his interaction with the defendant or purchased them unobserved afterwards.

In sum, the defendant's convictions were based entirely upon inference from Barkyoumb's observations, coupled with the discovery of drugs in Rodriguez's pocket and cash in the defendant's. We cannot say with fair assurance that the buttressing provided by the impermissible expert opinion had no effect,

engaging in and amounts to a prohibited expression of opinion as to the defendant's guilt. See *Commonwealth* v. *Woods*, 419 Mass. at 375 & n.13.

or but slight effect, upon the jury. Compare *Commonwealth* v. *Griffith*, 45 Mass. App. Ct. 784, 786 & n.3 (1998) (unobjected-to errors may be cumulated and weighed with those claims of error that have been adequately preserved). See *Commonwealth* v. *Demars*, 42 Mass. App. Ct. 788, 794 (1997), *S.C.*, 426 Mass. 1008 (1998). Indeed, the improper admission of Barkyoumb's opinion appears synergistically toxic when viewed in conjunction with the prosecutor's questions that suggested the defendant had an obligation to tell the police at the time of his arrest the sources and intended uses for the money in his pocket.

2. *Comment on the defendant's silence.* The defendant maintains that his convictions should be reversed because the prosecutor's redirect examination commented impermissibly on the defendant's right to remain silent. We place the problem in context.

*The defense cross-examination of Barkyoumb.* Defense counsel's cross-examination of Barkyoumb sought to create the innuendo that the money found on the defendant might have been intended for rent and had its source in a social security check rather than drug sales. Addressing the $375 found in the defendant's pocket upon his arrest, defense counsel inquired:

> DEFENSE COUNSEL: "And would it be fair to say that you have no personal knowledge of [the defendant's] financial resources?"
>
> BARKYOUMB: "I have none, no."
>
> DEFENSE COUNSEL: "You don't know whether he's employed or not, correct?"
>
> BARKYOUMB: "No."
>
> DEFENSE COUNSEL: "And September 30, the next day was October 1, correct?"
>
> BARKYOUMB: "Yep."
>
> DEFENSE COUNSEL: "And that's the first of the month, correct?"
>
> BARKYOUMB: "Right."

DEFENSE COUNSEL: "And normally when somebody rents an apartment, that's when rent's due, correct?"

BARKYOUMB: "I guess, yes."

DEFENSE COUNSEL: "So there's many reasons why a person would have money on his possession, correct?"

[Here the prosecutor objected.][4]

BARKYOUMB: "Right."

DEFENSE COUNSEL: "Right, so there's many different reasons."

BARKYOUMB: "Absolutely."

DEFENSE COUNSEL: "And a lot of, and ninety-nine point nine percent of those reasons would not be associated with drugs, correct?"

. . .

BARKYOUMB: "Yes."

*The prosecutor's redirect examination.* Without objection, the prosecutor's redirect examination of Barkyoumb took the following tack:

PROSECUTOR: "[When you found the money on the defendant,] did he offer you any explanation why he had so much cash on him?"

BARKYOUMB: "No."

PROSECUTOR: "[D]id he say his rent was due?"

BARKYOUMB: "No."

PROSECUTOR: "Did he say that he just got a social security check from somewhere?"

BARKYOUMB: "No."

---

[4]The prosecutor's general objection to the question was overruled by the judge with no ensuing request by the prosecutor for a sidebar or limiting instruction.

PROSECUTOR: "Did he offer you an explanation to tell you why? Did he say he just cashed a paycheck?"

BARKYOUMB: "No."

PROSECUTOR: "He told you nothing at all about why he had so much cash on him in numerous denominations?"

BARKYOUMB: "Nothing."

Such an inquiry should not have been undertaken by the prosecutor or allowed by the trial judge.

We begin by emphasizing that this is not a situation involving when, or in what circumstances, a defendant's prearrest, pre-Miranda silence or equivocal admissions constitute implied or adoptive admissions or constitute permissible subjects for cross-examination. See *Commonwealth* v. *Nickerson*, 386 Mass. 54, 62 (1982) (impeachment of defendant with fact of his prearrest silence should be approached with caution); *Commonwealth* v. *Peixoto*, 430 Mass. 654, 660 (2000); *Commonwealth* v. *Thompson*, 431 Mass. 108, 116-117, cert. denied, 531 U.S. 864 (2000). The defendant was under arrest at the time referenced in the prosecutor's inquiry.[5] Any questioning at that juncture would have required Miranda warnings, as once in custody, a defendant cannot be interrogated without Miranda compliance. See *Commonwealth* v. *Adams*, 434 Mass. 805, 811 (2001).[6]

Here, the defendant made no statements when the police discovered the cash in his pockets at his arrest.[7] The prosecutor's redirect examination impermissibly suggested that the defendant had an obligation to make an explanatory statement. Such a suggestion implicates directly the defendant's core constitutional right to remain silent. The defendant had no obligation to offer

---

[5]We are unable to discern from the record whether the defendant had received Miranda warnings at the time. The difference is inconsequential.

[6]This is not a case where statements were made in the defendant's presence prior to his arrest to which a reply from the defendant would normally have been expected. See *Commonwealth* v. *Haas*, 373 Mass. 545, 560 (1977) (discussing defendant's silence in presence of person making accusation concerning matters within defendant's knowledge which defendant heard and understood and which it would have been natural for him to deny).

[7]This is not a case where the defendant offered an explanation at his arrest that differed from his testimony at trial. See *Commonwealth* v. *McClary*, 33 Mass. App. Ct. 678, 685 (1992), cert. denied, 510 U.S. 975 (1993).

police an explanation for the money on his person. A defendant's silence while under arrest and prior to receiving Miranda warnings cannot be used against him. See *Commonwealth* v. *Cobb*, 374 Mass. 514, 520 (1978) ("every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested"). Nor can a prosecutor comment on a defendant's failure to "spontaneously volunteer" that he is innocent. See *Commonwealth* v. *Haas*, 373 Mass. 545, 558-559 (1977). A defendant, when in the hands of police, should be able to invoke core constitutional rights, such as the right to remain silent, without fear of making implied or adoptive admissions. See *Commonwealth* v. *Peixoto*, 430 Mass. at 659-660, quoting from *Commonwealth* v. *Sazama*, 339 Mass. 154, 157-158 (1959). The prosecutor's questions "implicated concerns similar to those protected by the rule preventing adverse comment on a defendant's actual exercise of his rights." *Commonwealth* v. *Peixoto*, 430 Mass. at 658.

That the prosecutor's questioning occurred on redirect examination is of no consequence. Use of the defendant's post-arrest silence to impeach an exculpatory explanation offered by defense counsel on cross-examination is prohibited. See *Commonwealth* v. *Adams*, 434 Mass. at 811 ("Evidence of postarrest silence used for the substantive purpose of permitting an inference of guilt or to impeach an exculpatory story violates the due process clause"). Even when confronted with defense questioning that is argumentative or otherwise improper, the prosecutor may not imply that the defendant has an obligation to explain. See *Commonwealth* v. *Thurber*, 383 Mass. 328, 334 (1981) (improper cross-examination does not open door to use evidence of defendant's silence by way of impeachment).

We are mindful that the situation arose in the rough and tumble of trial. However, the prosecutor had options other than eliciting a prohibited comment upon defendant's silence. Upon the judge's overruling his objection during cross-examination, the prosecutor might have requested a sidebar conference to inquire whether there existed a good faith basis for defense counsel's questions. Further, the prosecutor might have requested a contemporaneous limiting instruction that the witness's negative answer was not to be taken as evidence of the substantive truth of the proposition advanced. More obvi-

ously, redirect examination might have emphasized that the defendant placed the money received during each exchange in the same right front pocket in which the cash was found.

Although defense counsel lodged no objection, the impermissible questioning posed particularly grave risk. Impermissible comment upon a defendant's right to remain silent is "so egregious that reversal is the norm, not the exception." *Commonwealth* v. *King*, 34 Mass. App. Ct. 466, 469 (1993), quoting from *Commonwealth* v. *Mahdi*, 388 Mass. 679, 698 (1983). As noted earlier, taken together with the erroneous admission of Barkyoumb's opinion that he had observed street level drug transactions, we are satisfied that the probable impact upon the jury was considerable. See *Commonwealth* v. *Mahdi, supra.* Compare *Commonwealth* v. *Adams*, 434 Mass. at 811-815 (use of defendant's postarrest, post-Miranda silence as evidence of sanity not reversible error where initially introduced by defendant as part of trial strategy).

*Judgments reversed.*