Lu, John T., J.
INTRODUCTION
The defendant, Harry Norton (Mr. Norton), moves for a new trial pursuant to Mass.R.Crim.P. 30(b), claiming ineffective assistance of counsel. Mr. Norton makes four claims: 1) trial counsel failed to seek a mistrial or voir dire after one juror heard a sidebar conference; 2) trial counsel failed to seek a mistrial or ask a leading question after a police officer witness’s testimony possibly indicated familiarity with Mr. Norton through his prior bad acts; 3) trial counsel failed to object to testimony touching upon the ultimate issue of guilt; and 4) trial counsel failed to object to the admission of a Registry of Motor Vehicles (Registry) certificate of registration on confrontation clause grounds.
Only the claim that Mr. Norton’s trial counsel failed to object to testimony touching upon the ultimate issue of guilt raises a substantial issue as to trial counsel’s effectiveness. Even so, Mr. Norton cannot show that the failure resulted in substantial prejudice to his case. Because Mr, Norton has failed to raise a substantial issue that trial counsel’s behavior was measurably below that which might be expected from an ordinary fallible lawyer so as to deprive him of a substantial ground of defense, the court denies the motion for a new trial without a hearing.
BACKGROUND
Mr. Norton moves for a new trial following his conviction for operating a motor vehicle under the influence, operating a motor vehicle to endanger, operating an uninsured motor vehicle, and operating an unregistered vehicle. Mr. Norton alleges that he was deprived of effective assistance of counsel as guaranteed to him by Art. 12 of the Massachusetts Declaration of Rights, as well as the Sixth Amendment of the United States Constitution.
In September of 2008, a jury found Mr. Norton guilty on four indictments; 1) operating a motor vehicle under the influence; 2) operating a motor vehicle to *179 endanger; 3) operating an uninsured motor vehicle; and 4) operating an unregistered motor vehicle. At the trial, the Commonwealth presented its case through two civilian witnesses and three Framingham police officers. The defense called only the defendant to testify.[1]
The Commonwealth’s two civilian witnesses, Patrick and Amy Sullivan, testified about a car accident between themselves and Mr. Norton. Mr. Sullivan testified that on the morning of March 17, 2007, while driving with his wife, he observed the defendant’s truck traveling at a slow speed ahead of him. The roads were slushy from a snowstorm the night before and that, upon passing the defendant’s truck, Mr. Sullivan noticed that only a small square of snow had been cleared from the window. Mr. Sullivan then came to a stop at a red light. While the Sullivans were stopped at the light, Mr. Norton switched lanes and moved into the same lane as the Sullivans. Mr. Norton, while still traveling at a slow speed, hit their car from behind. Mr. Sullivan testified that at first he thought that Mr. Norton’s car had slid on a patch of icy road.
After checking for any damage to his car, Mr. Sullivan approached Mr. Norton’s truck and found him sitting behind the wheel, staring straight ahead. Although he could not smell alcohol on Mr. Norton, Mr. Sullivan concluded that he was under the influence of something after observing the “extremely slow and lethargic” manner in which he exited the vehicle. Mr. Sullivan commented to his wife that he thought Mr. Norton was drunk and she called the police.
Mrs. Sullivan testified that although she had no personal interaction with Mr. Norton, she had observed him driving erratically and swerving for at least three to four minutes before the accident. At one point, she thought he was going to hit a pedestrian who was walking along the side of the road.
The Commonwealth also called three Framingham police officers. The first, Officer Thomas McCarthy, was the first officer to arrive at the accident. Officer McCarthy testified that he smelled a “moderate” amount of alcohol on Mr. Norton’s breath and observed that the defendant was “stumbling and unsteady on his feet.” He also noted that Mr. Norton was speaking slowly, slurring his words and had glassy eyes. Officer McCarthy testified that Mr. Norton could not produce a license or proof of registration. Officer McCarthy also administered field sobriety tests at the scene, and testified that Mr. Norton performed poorly. On cross examination, Officer McCarthy conceded that one of the tests, the nine-step walk and turn test, might not have been valid as it was given on a slushy surface on an incline. However, he concluded his testimony by stating that, based on his training and experience, Mr. Norton was intoxicated and, as a result, he placed him under arrest.
The Commonwealth then called Officer Robert Sibilio, a Framingham police officer and field training officer. Officer Sibilio testified that when he arrived at the crash, he observed that Mr. Norton’s eyes were watery and glassy, Mr. Norton had a moderate amount of alcohol on his breath, had trouble standing in one place and was speaking slowly and slurring his words. Mr. Norton told Officer Sibilio that his last drink had been around midnight the night before, that he had not slept well, and that he had eaten a bowl of cereal for breakfast. Officer Sibilio administered an additional field sobriety test, on which Mr. Norton performed poorly. Officer Sibilio then testified that based on his observations, Mr. Norton was “operating under the influence of intoxicating liquor.” Trial counsel did not object to this statement. Officer Sibilio also identified Exhibit # 1, a Registry report on the status of Mr. Norton’s registration. Trial counsel did not object to the introduction of this exhibit.[2]
The Commonwealth’s final witness was Framing-ham Police Sergeant Donald Spaulding. Sergeant Spaulding testified that he booked Mr. Norton, and that Mr. Norton was “stuporous.” Sergeant Spaulding also testified that, based on his observations, he believed Mr. Norton to be intoxicated. On cross examination, Sergeant Spaulding testified that Mr. Norton did answer all of his questions, and that his personal information was “either verified or obtained.” Sergeant Spaulding also commented that he asked Mr. Norton other questions “just to verify information already on hand.” Trial counsel moved to strike these statements, the court struck the answer, and instructed the jury that they “will disregard that answer.” The court also advised the trial counsel that he may want to ask the witness a leading question about the source of this information to alleviate any prejudice it might have caused the defendant. Trial counsel declined to do so.
After the Commonwealth rested, the defendant moved for a required finding of not guilty. At a sidebar conference, trial counsel contended that the Commonwealth had not met its burden on the charges of operating under the influence and negligent operation. The Commonwealth argued that based on the evidence presented, it had sustained its burden of demonstrating that the defendant was under the influence of alcohol and that it had affected his ability to operate a motor vehicle. The court then began to rule on the motion, stating “as to the operating under the influence charge, I deny ...” before it was interrupted by a clerk, who informed the court that at least one juror was able to hear the sidebar conversation. The judge called a recess, and once the jury had left, informed the parties that he did not think the situation was problematic. Trial counsel agreed, and the court denied the motion.
The defense presented its case mainly through the testimony of Mr. Norton. He testified that he had consumed three or four beers the night before the accident, but had not been drinking the morning of his arrest. He testified that he lightly tapped the back *180 of the Sullivans’ car after sliding on ice. The defendant attributed his poor performance on the field sobriety tests to bad weather conditions and a knee injury. He admitted that his car was neither registered nor insured. Finally, he denied that the alcohol he drank the previous night had impaired his ability to drive on the day of the accident.
Mr. Norton now argues that he was denied effective assistance of counsel because trial counsel: 1) failed to seek a mistrial after at least one juror overheard the arguments at the sidebar; 2) failed to seek a mistrial, or follow the judge’s suggestion to ask a curative leading question after improper witness testimony; 3) failed to object to opinion testimony touching on the ultimate question of guilt; and 4) failed to object to the introduction of the Registry of Motor Vehicles Certificate of Registration on confrontation clause grounds. Mr. Norton seeks a new trial.
DISCUSSION
A trial judge “may grant a new trial at any time if it appears that justice may not have been done.” MassR.Crim.P. 30(b). In the absence of constitutional error, “(t]he decision to grant a new trial is within the sound discretion of the motion judge who is entitled to special deference if he was also the trial judge.” Commonwealth v. Shanley, 455 Mass. 752, 767 (2010) (internal quotations omitted). A judge may rule on a motion for a new trial without a hearing if the moving parly has raised no substantial issue in its motion or by affidavits. Commonwealth v. Wallis, 440 Mass. 589, 596 (2003). Whether an evidentiary hearing on a motion for a new trial is required is also within the trial judge’s discretion. Commonwealth v. DeVincent 421 Mass. 64, 67 (1995).
In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet two requirements to show that his Article 12 and Sixth Amendment rights have been violated: 1) his prior counsel’s performance fell “measurably below that which might be expected from an ordinary fallible lawyer”; and 2) counsel’s conduct “has likely deprived the defendant of an otherwise available, substantial ground of defense.” Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).[3] In a case where trial counsel’s tactical decisions are in issue, the court must conduct the review with some deference in order to avoid “characterizing as unreasonable a defense that was merely unsuccessful.” Shanley, 409 Mass, at 272. The tactical decisions must not be merely unreasonable, they must be manifestly unreasonable. Id. at 273.
I. Trial Counsel’s Failure to Seek a Mistrial or Voir Dire After Juror Overheard Sidebar Conference
Mr. Norton contends that trial counsel’s failure to request a mistrial or, in the alternative, a voir dire, when he learned that at least one juror had overheard a sidebar conference regarding the motion for a required finding of not guilty fell measurably below the range of reasonableness expected of an ordinary fallible lawyer. Mr. Norton suggests that this prejudiced his case because the jurors were exposed to extraneous matters concerning the trial, see Commonwealth v. Guisti, 434 Mass. 245, 251 (2001), and because there was a potential impact on at least one juror’s impartiality after hearing the trial judge begin to deny the motion for a required finding of not guilty. See Commonwealth v. Sneed, 376 Mass. 867, 870 (1978) (noting that any judicial comment is likely to be afforded substantial weight by a juror).
Even if counsel’s failure to seek a mistrial or to request a voir dire was conduct falling “measurably below that which might be expected from an ordinary fallible lawyer”; Saferian, 366 Mass, at 96; which the court does not find occurred in this case, the court disagrees with Mr. Norton’s contention that this conduct significantly prejudiced the defendant.
In considering a motion for a required finding of not guilty, the court only weighs the evidence introduced up to the time the Commonwealth rested its case and the defendant first filed the motion. Commonwealth v. Dwmington, 390 Mass. 472, 475 (1983). Anything that the Commonwealth argued during the sidebar conference had already been presented to the jury, and any statements or arguments from trial counsel at sidebar would most likely have been beneficial to the defendant.
In the jury charge, the court instructed the jury that the sidebar conference “is not evidence . . . anything you know about those sidebar conferences is not evidence, and must not be communicated by you to other jurors.” The court also gave curative instructions regarding any statements the court made during the sidebar conference, telling the jury that they were not to “take any of my words as . . . any indication of my opinion as to the defendant’s guilt or innocence. If you believe during the course of the trial that I have an opinion as to any disputed fact in this case, you are to disregard it; that is your area of responsibility.” The court further instructed the juiy that it had “no opinion as to what [the] verdict should be. Now, if you think mistakenly that [it does], you must disregard your belief that [it has] an opinion. [The court] is completely neutral and impartial."
Any perceived pre-judgment by the court was ameliorated by the court’s curative instructions. See Commonwealth v. Johnson, 429 Mass. 745, 752-53 (1999) (any adverse effect on the jury that a judge’s actions may have had were ameliorated by the court’s thorough and explicit jury charge). Because the jury received proper guidance in how to treat what they may have overheard, and the court presumes juries will understand and apply limiting instructions correctly, Commonwealth v. Roberts, 378 Mass. 116, 128 (1979), Mr. Norton was not deprived of a substantial defense by trial counsel’s failure to request a mistrial or voir dire.
*181 Finally, in the court’s view, it is unrealistic for Mr. Norton to assume that jurors fail to understand that judges exercise a screening function by terminating, in some fashion, extremely weak prosecutions; in other words, the jurors likely assume that a discussion similar to that at issue routinely takes place.
II. Trial Counsel’s Failure to Seek a Mistrial or Follow the Court’s Suggestion to Ask an Extremely Leading Question After Witness Indicated Familiarity with the Defendant
Mr. Norton next argues that it was ineffective to fail to seek a mistrial or ask leading questions of the witness, as advised by the court, after Sergeant Spaulding testified that, while booking Mr. Norton, he asked questions meant to either obtain or verify information already on hand. Mr. Norton claims that because trial counsel’s only action was to move to strike the statements, the jurors were left with the impression that the police knew the defendant because of prior criminal activity, unfairly prejudicing his case. The defendant’s argument fails both requirements of the Sqferian test.[4]
Where a defense attorney’s tactical decision at trial is in issue, the court must review the decision with enough deference to avoid characterizing an unsuccessful defense as an unreasonable one. Shanley, 409 Mass, at 272. Here, the court, in giving trial counsel’s decision deference, can see wholly legitimate reasons for declining to further address the improper testimony.
For example, the Commonwealth has argued that, had trial counsel asked a very leading follow-up question, after the court had already stricken the statements from the records and told the jury to disregard them, it would only have served to bring the issue back into the forefront of the jurors’ minds.
The likelihood of the court granting a mistrial solely on the basis of Sergeant Spaulding’s statements is extremely low. His testimony did not sufficiently reference Mr. Norton’s prior bad acts to provoke anything more than speculation and conjecture by the juiy, which the court instructed them they may not engage in. See Commonwealth v. Qualls, 440 Mass. 576, 584 (2003) (where testimony of a prior bad act was stricken from the record, the judge gave curative instructions that the jury disregard the answer, and the judge also informed the jury they were prohibited from engaging in speculation and conjecture, there were no grounds for a mistrial).
Nor did trial counsel’s failure to seek a mistrial or ask a leading question deprive Mr. Norton of a substantial defense. As mentioned above, Sergeant Spaulding’s statements were stricken, the court instructed the juiy to disregard the testimony and, during final instructions, reiterated to the juiy that “if I struck an answer, it is though that answer was never given, and it must play no part whatsoever in your deliberations.” The court further informed the juiy that they “may not indulge in conjecture or guesswork in drawing inferences.” To find that these improper comments, which were stricken and which jurors were explicitly told to disregard, prejudiced Mr. Norton’s case would conflict with the tenet that “effective operation of our criminal justice system requires that we trust juries to understand and apply limiting instructions correctly.” Commonwealth v. Roberts, 378 Mass. 116, 128 (1979).
III. Trial Counsel’s Failure to Object to Opinion Testimony Touching Upon Ultimate Issue of Guilt
Mr. Norton claims that he was deprived of effective assistance of counsel when trial counsel failed to object to Officer Sibilio’s testimony that, in his opinion, the defendant was “operating under the influence of intoxicating liquor.” While the court agrees with Mr. Norton’s contention that this omission fell measurably below the standard expected of an ordinary fallible lawyer, it does not believe that this mistake was fatal to his case. It is well-established that the admission of statements by percipient witnesses that touch upon the ultimate guilt of a defendant intrude on the juiy’s fact-finding function as to proof of elements of a crime. Commonwealth v. Tanner, 45 Mass.App.Ct. 576, 580 (1998). Trial counsel should have objected to Officer Sibilio’s testimony that Mr. Norton was operating under the influence. He fell measurably below the standard expected of an ordinary fallible lawyer when he failed to do so.
In evaluating a defendant’s ineffective assistance of counsel claim for failing to object to improper testimony, the court will determine whether its admission created a substantial risk of a miscarriage of justice. Commonwealth v. Madera, 76 Mass.App.Ct. 154, 160 (2010). Trial counsel’s mistake did not create such a risk for the following reasons.
The only element of the crime contested at trial was whether Mr. Norton was intoxicated, not whether he was operating a motor vehicle at the time of his arrest. Although a police officer witness may not opine as to operation, he may offer an opinion as to whether the defendant was under the influence. Commonwealth v. Sudderth, 37 Mass.App.Ct. 317, 321 (1994). Given the general strength of the Commonwealth’s case, it is unlikely that Officer Sibilio’s testimony was the one factor that the jury depended on in rendering a guilty verdict. See Tanner, 45 Mass.App.Ct. at 580 (in view of the strength of the Commonwealth’s case against the defendant, it was unlikely that a witness’s statement concerning guilt was the deciding factor for the juiy). Mr. Sullivan testified that he believed that Mr. Norton was drunk, given his slow and lethargic movements. Mrs. Sullivan testified that she observed the defendant driving erratically for about three to four minutes before the accident. Officer McCarthy testified that he smelled a moderate amount of alcohol on the defendant’s breath, that the defendant’s speech was slow and slurred, and that the defendant seemed unsteady on his feet. Sergeant Spaulding testified that the defendant was “stuporous” during the booking, and that he believed the defendant was intoxicated.
*182 Given the weight of the evidence of the defendant’s intoxication presented by the Commonwealth, there is no indication that the testimony had any effect upon the jury, especially where the only contested element of the crime was intoxication, not operation. See Commonwealth v. Andujar, 57 Mass.App.Ct. 529, 532-33 (2003). Mr. Norton cannot satisfy the second criterion of the Saferian test, and his claim of ineffective assistance of counsel on this basis fails.
IV. Defense Counsel’s Failure to Object to Introduction of the Registry of Motor Vehicles Certificate of Registration.
Mr. Norton’s final basis for his ineffective assistance of counsel claim stems from the Commonwealth’s introduction of a certificate of registration from the Registry showing that the defendant’s vehicle was unregistered at the time of the accident. Mr. Norton argues that the certificate was testimonial, and that his right to confront witnesses against him, as guaranteed by the Sixth Amendment, was violated. Mr. Norton contends that his trial counsel’s failure to object to this evidence was unreasonable, given that the United States Supreme Court had, at the time of trial, granted certiorari in Melendez-Diaz, a case in which the testimonial nature of drug analysis documents was in question. Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009). Because the court disagrees with his characterization of the Registry certificate as testimonial, Mr. Norton cannot meet either of the two prongs of the Saferian test.
In Melendez-Diaz, the Supreme Court found that a defendant’s Sixth Amendment right to confront witnesses against him was violated when documents prepared by laboratory analysts for the Commonwealth were admitted at trial and the analysts were not called to the stand. Melendez-Diaz, 129 S.Ct. at 2532. The Commonwealth had characterized the documents — which contained the results of tests conducted to determine whether a substance found on the defendant was an illegal narcotic — as “certificates.” The Supreme Court rejected this characterization, instead finding the documents to be affidavits, which are considered to be testimonial. Id.
The Supreme Court made its determination based on a number of factors: 1) the documents were sworn to by the laboratory analysts before a notary public; 2) they were prepared as a finding of fact in preparation for trial; and 3) the documents, which established prima facie evidence of the composition, quality, and net weight of the substance were essentially, “functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination.” Id. (internal quotations omitted). The Supreme Court reasoned that these factors led to the conclusion that the affidavits were “made under circumstances which would lead an objective witness to believe that the statement would be available for use at a later trial.” Id. (internal quotations omitted). The Supreme Court also noted its concern with the possibility that laboratory analysts may feel pressured to alter evidence in a manner favorable to the Commonwealth. Id. at 2536.
The admission of the Registry certificate did not violate Mr. Norton’s Sixth Amendment right to confront witnesses against him. See Commonwealth v. McMullin, 76 Mass.App.Ct. 904 (2010). Unlike the affidavits in Melendez-Diaz, the Registry certificate was created and maintained independent of any prosecutorial purpose, and is admissible as an ordinary business record pursuant to G.L.c. 233, §78, as well as an authenticated record of a governmental department pursuant to G.L.c. 233, §76. Commonwealth v. Martinez-Guzman, 76 Mass. App. 167, 171 n.3 (2010) (the Registry of Motor Vehicles is an independent agency of the State charged not only with keeping complete records of the status of drivers’ licenses, but also with keeping complete records of any convictions of persons charged with motor vehicle violations, rendering the maintenance of those records independent from a prosecutorial purpose and admissible as evidence). Because admission into evidence of the certificate did not violate Mr. Norton’s Sixth Amendment right to confront the witnesses against him, it was not ineffective assistance of counsel for trial counsel to fail to object to its admission.
ORDER
The defendant, Harry Norton’s, Motion for a New Trial (Paper #43) is DENIED.
APPENDIX
The following is the sidebar conference on the motion for a required finding of not guilty:
THE COURT: Okay. I’ll see counsel at sidebar, please.
(Sidebar commences:
THE COURT: Okay. I’ll hear you.
[DEFENSE COUNSEL): Judge, on the unregistered and uninsured, there was no evidence as to the— what the license plate number was of this Ford Ranger that Mr. Norton was operating. Therefore, because no evidence came in about what the license plate or registration number was of his vehicle, there’s no way the jury can use the certification to match it up to his vehicle. The officers, neither Sibilio—
THE COURT: You need to be just a little bit quieter. You can get right on top of that microphone.
[DEFENSE COUNSEL): Neither Sibilio or McCarthy testified as to their observation of what the license plate number was which then could have been used to match the cert. I’d suggest that they have failed to meet the burden on that charge.
And as far as the OUI — as far as the OUI, I think that they failed to show that there was any alcohol consumption, and I’ll leave it at that.
And as far as the negligent operation, I haven’t seen any evidence at all that he operated his motor vehicle negligently so that the lives or the safety of *183 the public — safely of the public was in danger or the lives or the safety was endangered at—
(Cellphone rings.)
—all. He was — on the testimony on the driving, it was very slow. I thought I turned that off, Your Honor. I’m sorry. I specifically went and turned it off, but I guess I didn’t.
THE COURT: Okay. All right. No problem. All right. Go ahead.
[DEFENSE COUNSEL): So I think that the — I think that on the negligent op, I don’t think they met their burden. I mean all the testimony has been that he’s driving very slowly and that he taps the vehicle and there’s no damage. So I don’t think that they’ve met their burden on that.
THE COURT: Okay. Thank you. Okay. I’ll hear the Commonwealth.
MS. GOSULE: Your Honor, with respect to the registration documents, I believe the testimony was that I — there was a question asked, “Did you get the license number?” And the response was, “Yes.” The registry certs were introduced as evidence as the defendant’s registry documents related to his registration. The information contained in those documents is in evidence, and it has—
THE COURT: Not too loud.
MS. GOSULE: Sorry. Sorry. And it has—
THE COURT: You can get right on top of that microphone.
MS. GOSULE: It has Harry’s name, date of birth which was part of the evidence that is what’s contained within that document. With respect to the OUI, I would suggest that the Commonwealth has met its burden. There was several opinions made, observations made, of the defendant being under the influence of alcohol. I don’t have to prove how many beverages he had. I don’t have to prove when he drank those beverages, just that he had consumed enough alcohol to affect his ability to drive a car safely. I think based on the evidence the jury has heard, the Commonwealth has definitely met that — the Lattimore standard if not beyond a reasonable doubt.
With respect to negligent operation, there’s civilians testified that they were concerned for their safety. Amy Sullivan testified that she was concerned for the safety of a pedestrian, that the car seemed to be out of control even though it was going so slowly that it was veering, and then it came back and then it did strike a car. Even though it was a light strike it was still a strike, nonetheless. So I would suggest that the Commonwealth has met its burden even just at a Lattimore standard, the Commonwealth has met its burden with respect to the negligent operation, and I’d ask you to deny the defendant’s motion for a required finding of not guilty.
THE COURT: All right. Thank you. So as to the operating under the influence charge, I deny—
(The Court and Clerk Dunn confer.)
(There was a pause in the proceedings.) end of sidebar.)
THE COURT: Okay. We’ll take a break. All right, folks, at this time we’re going to take a break. We are nearing the end of the evidence in this case, but we’re going to take abreak at this time. The jurors willbe excused.
(Jury out.)
THE COURT: All right. Okay. Well, the acoustics here appear to, at least on that last sidebar, that one of the jurors hear what we say. I have to say without giving it too much reflection I’m not sure that is problematic that was discussed during the sidebar conference, but.
[DEFENSE COUNSEL): Yeah, I don’t think so, Your Honor.
THE COURT: Probably going to be pretty similar to your closing argument. But in any event, the motion for a required finding on the operating under the influence charge is denied. The motion for a required finding for the negligent operation charge is denied.
Now, is there any evidence of what the plate was of the defendant’s car?
MS. GOSULE: Just that the officer got the plate. I didn’t ask what the plate number was, Your Honor.
THE COURT: But the plate number never came in, Your Honor. May I see the exhibit? It may be the only exhibit. Thank you.
(There was a pause in the proceedings.)
THE COURT: Well, I am concerned that we have, for example, a notice from the registry, and it has a registration plate number, but I’m concerned that this is not sufficient to provide proof beyond a reasonable doubt.
MS. GOSULE: Your Honor, I would suggest to the Court that the officer testified that obtained the license information. I did not ask the specific license number, I’m sorry, not the license information, the license plate number. I did not ask him what it was. The exhibit was then presented to him. If you recall there was some difficulty with asking him questions pertaining to that document, but I do — my memory was that he did testify that that document related to his — to the defendant’s registration. Prior to that, he had testified that he obtained the registration number, his license plate number as well as the defendant’s date of birth and that that registry document was in fact belonging to the defendant. In the defendant’s opening, I know it’s not evidence, he did admit that his license — his registration was revoked as was his insurance.
THE COURT: This is the second officer? How do you spell the second officer’s name?
*184 MS. GOSULE: S-I-B-I-L-I-O, Sibilio.
THE COURT: All right.
MS. GOSULE: S as in Sam, I-B-I-L-I-O.
[DEFENSE COUNSEL): S-I-B, I believe.
MS. GOSULE: I said B.
[DEFENSE COUNSEL): Oh, okay.
THE COURT: S-I-B?
[DEFENSE COUNSEL): S-I-B-I-L-I-O.
THE COURT: Okay. I’m looking at his testimony.
(There was a pause in the proceedings.)
THE COURT: Okay. Here’s testimony: “At some point during my conversation, I learned about his registration. He gave me a registration. I called the registration number into dispatch.” This is a certificate from the registry — and then the — -there’s some irrelevant testimony. A document is placed before the witness, obviously Exhibit Number One. “This is a certificate from the Registry of Motor Vehicles for Mr. Norton for the status of his registration. That is the information that I learned, the defendant’s registration.” So it sounds like it’s close on the registration, but enough to get over the rail.
The reason I sustained the objection was because you cannot give, we’ll call it an expert opinion, that the defendant is guiliy of this offense even if he’s got the registration document in front of him, the certificate document. That’s a rough description of the reason for my sustaining the objection. It’s not really precise, but it’s not really pertinent to what we’re discussing. All right. So as to the motion for a required finding as to operating — may I see the indictments, please? Actually, I have copies here. Well, I might as well look at the originals.
Okay, so, count 007, unregistered, the motion for a required finding is denied. Okay, now we still have the uninsured portion. Now, what’s the defendant— is the defendant’s argument different on this one?
[DEFENSE COUNSEL): Well—
THE COURT: Boy, I wonder, I wonder if this certificate which is in evidence, and there’s enough to authenticate it and to show that it’s connected to the defendant’s car. It says “insurance cancellation,” and then it says — what’s the date of offense allegedly?
MS. GOSULE: March 17.
THE COURT: March 17, 2007. 12/18/2006 insurance cancellation. 12/18/2006 I’m reading the— there are acronyms or abbreviations here. I’m reading them out for what they mean. “12/18/2006 revocation insurance cancellation indefinite. Finding date: 12/28/2006.” All right, it sounds like it’s enough to get over the rail to me. If you find some authority that totally straightens that out, you can renew it at the close of all the evidence.
So the motion for a required finding is denied as to all the indictments that are on trial at this point.

 The defendant pled guilty to the count of operating a motor vehicle under the influence of liquor as a subsequent offense, fifth offense. As to the counts of operating under the influence after suspension of license for operating under the influence and operating a motor vehicle after suspension of license for operating under the influence, the court, in a separate juiy-waived trial, allowed the defendant’s motion for a required finding of not guilty.

 The defendant is represented by new counsel.

 Because the state standard is stricter than the federal standard, Strickland, v. Washington, 466 U.S. 668 (1984), if the defendant meets both Saferian criteria, he automatically satisfies the federal test.

 The following is the question and answer at issue, along with the sidebar conference:
Q. Yes. When you asked him a question, you got everything you asked, right?
A.. In some cases, it was just to verify information already on hand.
[DEFENSE COUNSEL]: Judge, I’d ask that answer be stricken.
THE COURT: Let me see counsel at sidebar.
(Sidebar commences:
THE COURT: Why don’t you ask him an extremely leading question just saying, when you say verified, you got it off of his license or a document, okay? And I will strike the answer.
[DEFENSE COUNSEL]: Thank you. end of sidebar.)
THE COURT: All right. The answer is stricken. The jurors will disregard that answer.
Q. Now, you stated that he — his speech was thick, correct?
A. Yes.